IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES CAVANAUGH, on behalf of himself and all other persons similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>LYTX, INC.,<br><br>    Defendant. | Case No. 1:21-cv-05427<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Maria Valdez |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS RULE 12(b)(6)
MOTION TO DISMISS CLASS ACTION COMPLAINT**

**INTRODUCTION**

This one-count Biometric Information Privacy Act ("Privacy Act" or "BIPA") putative class action against defendant Lytx, Inc. ("Lytx" or "defendant"), should be dismissed with prejudice. Lytx is a developer of the DriveCam® device, which uses machine vision and artificial intelligence ("MV+AI") technology to detect poor driving and risky driving behaviors, primarily by commercial drivers. Plaintiff James Cavanaugh ("plaintiff"), a former truck driver for a Lytx client, alleges that Lytx violated Section 15(b) of the Privacy Act by allegedly collecting video of his risky "driving behaviors" without first giving him written notice and obtaining his written consent.

Just as Title VII of the Civil Rights Act of 1964 is not a "general civility act," the Privacy Act is not a far-reaching, general privacy statute. The Privacy Act does not prohibit companies from collecting videos or photographs of risky driving behaviors.

Here, the Complaint requires this Court to infer, without any factual support, that the DriveCam device's collection of video or photographs to analyze and predict risky driving behaviors is the functional equivalent of a scan of facial geometry. The Complaint contains no

factual allegations to suggest or support the conclusion that Lytx scans and measures the unique shape of individuals' faces (their facial geometry) in order to determine whether s/he is looking at their cell phone, eating, drinking, smoking, looking away from the road, or otherwise being inattentive.

Plaintiff's allegation that the DriveCam device "scans facial geometry" is therefore a bare legal conclusion unsupported by any facts. (ECF 1, ¶7.) "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court has repeatedly dismissed complaints for failure to state a claim when they not only rely on improper legal conclusions, but also require the Court to take a factually-unsupported inferential leap.

Furthermore, the Privacy Act regulates the collection of biologically unique "biometric identifiers" that are immutable and never change. Plaintiff's complaint alleges that the Lytx DriveCam device collects and analyzes video or photographs of a driver's constantly changing, mutable "behaviors." That is the exact opposite of what the Privacy Act regulates. Plaintiff has therefore pled himself out of court by alleging facts which, if proven, defeat any Privacy Act claim. That is because the Privacy Act does not regulate the mutable, changing "behaviors" analyzed by the DriveCam device's MV+AI algorithm. Plaintiff thus has not pled a plausible, cohesive Privacy Act violation and his claim should be dismissed for failure to state a claim upon which relief can be granted.

Accordingly, for all these reasons, and those more thoroughly explained below, Lytx respectfully requests that the Complaint be dismissed with prejudice.

## FACTUAL BACKGROUND

The facts in this case are simple. As pleaded, they do not allege an actionable BIPA violation. Plaintiff alleges that while he worked as a driver for Quikrete, an Elburn, Illinois

manufacturer of packaged concrete, Quikrete installed Lytx's DriveCam device in its trucks, including the one plaintiff drove. (ECF 1, ¶¶10-11.)

The Complaint alleges that the DriveCam device uses "machine vision and artificial intelligence" ('MV+AI Technology') … to "monitor driver activity to detect driver behavior" and "identifies inattentive driving that may be caused by looking at a mobile device, driver fatigue, or drowsiness." (*Id*. ¶¶5-6.) The Complaint alleges the collected data is "uploaded via a wireless network" and "[t]hat data is then analyzed by Defendant to identify driving behaviors." It further alleges that Lytx has a "database" of "driving data that allows its artificial intelligence to identify and interpret different driving scenarios." (*Id.* ¶15.)

The one-count Complaint alleges that Lytx collects scans of facial geometry without first providing its customers' drivers written notice and obtaining written consent in violation of Section 15(b) of the Privacy Act. (*Id*. ¶¶16-19, 44-50.) In an attempt to plead a Privacy Act violation, plaintiff alleges that Lytx's technology analyzes behavior and mutable physical states – such as looking at a cell phone while driving – by collecting facial geometry scans without first informing plaintiff of such collection or obtaining plaintiff's written consent. (*Id*. at ¶¶6-7, 16-18.) As demonstrated below, plaintiff not only fails to allege sufficient facts to plausibly state a Privacy Act claim, but also plaintiff pleads himself out of court.

## **RELEVANT PROVISIONS OF THE PRIVACY ACT**

Section 15(b) of the Privacy Act, the only provision allegedly violated, permits the collection of biometric identifiers and biometric information upon notice and consent. 740 ILCS 14/15(b). "Biometric identifiers" are defined to include a "retina or iris scan, fingerprint, voiceprint, or scan of hand or facial geometry." 740 ILCS 14/10. The term "biometric identifier" by its very name - "identifier" - requires identification. *See Rivera v. Google Inc.*, 238 F.Supp.3d

1088, 1096 (N.D. Ill. 2017) ("a 'biometric identifier' is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person").

"Biometric information" means "any information … based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10.

The Privacy Act excludes "photographs" from Section 15(b)'s compliance requirements by excluding "photographs" from the definitions of biometric identifier and biometric information. 740 ILCS 14/10.

## LEGAL STANDARD

The standards the Court applies in evaluating a motion to dismiss under Rule 12(b)(6) are well-established, and they are critically important in this case. While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, 550 U.S. at 555. The complaint's factual allegations must establish a plausible right to relief and be sufficient to "raise a right to relief above the speculative level." *Twombly* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Put differently, to survive a Rule 12(b)(6) motion the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In applying this standard, the Court accepts

4

well-pleaded facts as true, and draws reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). But the Court does not assume the truth of "conclusory statements" or "threadbare recitals of a cause of action's elements." *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, MDL No. 2272, 2012 WL 3582708, at *6 (N.D. Ill. Aug. 16, 2012) (quoting *Iqbal*, 556 U.S. at 678). And reasonable inferences must "appear to flow from a plaintiff's allegations; if the allegations instead are 'merely consistent with' a defendant's liability, they do not satisfy the plausibility test." *Id.* (quotation omitted).

When discovery is likely to be more than unusually costly – as with a class action, the complaint must include as much factual detail as may be required to show that plaintiffs have plausible claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7thh Cir. 2008). The purpose of the plausibility requirement is to avoid the "in terrorem" effect of allowing plaintiffs with a "largely groundless claim" to "force defendants into either costly discovery or an increased settlement value." *Id.*

## ARGUMENT

I. **Plaintiff Does Not Plausibly Allege That Lytx Collected Facial Geometry Scans.**

   A. **Plaintiff's allegations rely on a cherry-picked graphic from a video that fails to demonstrate any collection of scans of facial geometry.**

The entirety of plaintiff's theory rests on Paragraph 9 of his Complaint, which alleges:

> 9. The following screenshot from a video on Defendant's website illustrates the MV+AI Technology capturing *face scan and other data* to identify distracted driving.



https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence.

(ECF 1, ¶9.) (emphasis added)

Paragraph 9 is unsupported speculation and conclusion and should be disregarded. The animated driver has no face. Thus, the screenshot does not (and cannot) show a "scan of facial geometry." It shows gridlines across the driver's upper body and faceless head. Plaintiff does not (nor can he) allege that the insertion of gridlines across the driver's faceless head and upper body represents or confirms a "scan of facial geometry." Nor do the gridlines change the content of the video, which shows the driver turning his faceless head away from the road to look at a cell phone in his hand. The video then states: "Assessment: Distracted Driving."[1]

The Complaint never alleges that Lytx uses an algorithm to measure the position and size of plaintiff's eyes, noses, cheekbones, jaws, and other immutable aspects of facial geometry

---

[1] Similarly, gridlines can be placed across this brief by going to "View," then checking the box for "Gridlines." That does not transform this brief into a "scan" or alter the meaning of its content.

necessary to recognize or identify unique individuals. Instead, the Complaint implies that any "face scan," video or image implicates BIPA and requires compliance with BIPA's notice and consent regime. If this were the case, fans could sue any TV station when they appear on screen during a game. Theme park patrons could sue any theme park where a video is taken of their ride, all despite the fact that no "scan of facial geometry" was collected.

Other BIPA complaints have clearly and plausibly alleged how the technology at issue scans plaintiff's facial geometry. No complaint has passed muster by merely alleging the conclusion that the technology is a "face scan" or a "scan of facial geometry" with no supporting facts. *Compare Santana v. Take Two Interactive Software, Inc.*, 717 F. App'x 12, *13-14 (2d Cir. 2017) (complaint against video game developer alleged how scans of facial geometry created a 3-D "avatar" of the "gamer's face": "3-D mapping process uses cameras to capture a scan of the gamer's facial geometry, which is then used to disseminate a realistic rendition of the gamer's face. Gamers must hold their faces within 6 to 12 inches of the camera and slowly turn their heads 30 degrees to the left and to the right during the scanning process"); *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1091 (N.D. Ill. 2017) (complaint alleged that Google's facial recognition technology scanned plaintiff's facial geometry when it "zeroed in on [the face's] unique contours to create a 'template' that maps and records her distinct facial measurements"); *Vance v. IBM Corp.*, 2020 WL 5530134, *1 (N.D. Ill. Sept. 15, 2020) (complaint alleged that IBM created a "dataset" of diverse faces by scanning the facial geometry of plaintiff and others from a Flickr dataset, which "extracted 68 key-points and at least ten facial coding schemes, such as craniofacial distances, craniofacial areas, craniofacial ratios, facial symmetry").

Significantly, Paragraph 9 of the Complaint omits the next few frames of the video the Complaint relies upon, which show the driver turning his head away from the road to look at his

7

cell phone while driving, and the DriveCam device's assessment of his *behavior,* namely "distracted driving."



https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence

Although plaintiff failed to provide the Court with the video's context or the following screenshots, case law allows Lytx to do so in its motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).[2]

---

[2] In *Williamson*, the Seventh Circuit explained: "But we have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice. (citations omitted) *see, e.g., Bogie*, 705 F.3d at 608-09 (considering video cited in and attached to complaint); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690-91 (7th Cir. 2012) (considering videos cited in complaint in support of copyright infringement claim and submitted by defendant in support of motion to dismiss). What makes it appropriate for us to consider the documents that Williamson has attached to her complaint is that she has not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims."

Thus, the Court may review the animated video to see that it is designed to demonstrate specific behaviors analyzed by the DriveCam device. Plaintiff's speculation and conclusory allegations of "scans of facial geometry" should not unlock the doors of discovery for a multi-million dollar BIPA class action.

### B. Plaintiff's allegations regarding Lytx's analysis of driving behavior defeat his BIPA claim.

The Complaint should further be dismissed because plaintiff does not plead any facts to show a plausible nexus between Lytx's purported collection of video of common, mutable driving behaviors and the collection of unique, immutable biometric data regulated by the Privacy Act. (ECF 1.) Rather, plaintiff merely crops a faceless graphic from a video and then parrots BIPA's language regarding prohibitions on collecting biometric data. (*Id.* ¶¶16-19.) Courts will not entertain "allegations [which] 'merely parrot' BIPA's statutory language [and] do not provide any specific facts to ground plaintiff's legal claims." *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021). The Seventh Circuit has held that plaintiffs who "merely parrot" statutory language while pleading "sketchy or implausible" facts are to be "admonish[ed]." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Time and again, this Court has distinguished between a complaint's factual and conclusory allegations, rejecting sketchy or implausible facts that require logical (or illogical) leaps. For instance, in *Harper vs. Dart*, this Court held that plaintiff failed to state a claim because he pled "no *factual* allegations (as distinct from statements of bare conclusions) to support this claim." *Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, at *3 (N.D. Ill. Oct. 21, 2015) (emphasis in original); *see also Oury v. Ravenna, LLC*, No. 17-CV-03580, 2017 WL 8204098, at *3-4 (N.D. Ill. Dec. 8, 2017) (distinguishing the facts in the complaint from conclusory allegations and granting the defendant's 12(b)(6) motion). Here, in addition to the facts plaintiff pleads about

9

Lytx's collection of behavioral data, plaintiff pleads the bare conclusion that Lytx collects facial geometry scans when it collects the behavioral data. But there are no facts that permit the inference that facial geometry scans are necessary for the DriveCam device to perform its function of predicting risky driving behaviors. (ECF 1, ¶¶12, 16-19.)

This Court is plain in its decisions that it will not take inferential leaps based on speculative, conclusory, or missing facts. Requiring courts to make inferential leaps by filling in missing facts "is the type of speculation that *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), identify as insufficient to pass muster under Rule 12(b)(6)." *Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 574 (7th Cir. 2013). This Court has not entertained such speculation in other cases and should not do so in this case. *See Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *4 (N.D. Ill. Mar. 24, 2020) (holding "Nevertheless, the Plaintiffs argue—solely on the basis that the pleadings should be viewed in their favor at the motion-to-dismiss stage—that the Court should simply fill in the gap and infer that the Board had 'actual knowledge' between 'the date in which Reynolds observed Velarde improperly touch[ing] James Doe's penis' and 'the date that police were notified ....' Pls.' Resp. Br. at 9. This takes notice pleading too far. That is, the complete absence of factual allegations cannot form the basis of a reasonable inference in the Plaintiffs' favor.") *see also Wilson v. Obaisi*, No. 17 C 3917, 2020 WL 1491183, at *3 (N.D. Ill. Mar. 27, 2020) (rejecting request to take inferential leap unwarranted by the facts).

The few facts alleged in the Complaint demonstrate only that Lytx collects and analyzes video or photographs of behavior. (ECF 1, ¶¶6, 8, 14-15.) The gist of the Complaint is plaintiff's speculation that because a camera is trained on the driver, it must be scanning his or her facial geometry. But plaintiff has pled no facts to support or ground this speculation and legal conclusion. That leaves only the allegation that Lytx collected video of common, mutable driver behavior, a

subject that the Privacy Act does not regulate. 740 ILCS 14/10. That is insufficient to state a claim under the Privacy Act.

Thus, the fundamental defect in the Complaint is that BIPA regulates immutable biometric identifiers and information, not unsafe driving "behaviors" which are mutable and constantly changing. (ECF 1, ¶¶ 6-8, 11-12, 16-19.) *See also* 740 ILCS 14/10.

BIPA exists because biometric identifiers are unique to an individual and do not change:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, *social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual*; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c) (emphasis added).

A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Plaintiff brings suit under Section 15(b), which prohibits private entities from collecting biometric identifiers and biometric information without first complying with the Privacy Act's written notice and consent requirements. 740 ILCS 14/15(b).

The Privacy Act protects a person's unique, immutable biometrics. Here, plaintiff pleads that Lytx violated the Privacy Act by analyzing common, mutable behavior and physical states. That is not something the Privacy Act regulates and, therefore, plaintiff fails to state a claim upon which relief can be granted.

Plaintiff specifically claims that Lytx violated Section 15(b) by collecting video of his behavior without his knowledge or consent. (ECF 1, ¶¶6-8, 11-12, 16-19.) However, the Privacy Act does not prohibit the collection of behavioral data. 740 ILCS 14/10. Behavior changes; biometric identifiers such as facial geometry scans do not. A driver can be looking at their phone

11

or at the road, or can be inattentive or alert. These actions and physical states *change by the minute or second*. Biometrics like facial geometry, however, are static and *immutable*, which is the very reason BIPA protects them. 740 ILCS 14/5(c). Plaintiff thus alleges that Lytx's technology violates BIPA by analyzing constantly changing actions, such as the head turning from the road, a head nodding off, distractions caused by eating, drinking or cell phone use. The Complaint contains no allegations to suggest why Lytx scans and measures the unique shape of individuals' faces (their facial geometry) in order to determine whether the person is reaching for their phone, drinking, using their cell phone, looking away from the road or otherwise being inattentive. (ECF 1.) Plaintiff's unsupported claim is contradictory and implausible.

Moreover, BIPA regards categories *unique* to individuals – categories which *identify* them. 740 ILCS 14/5(c). The reason that Lytx analyzes certain behaviors is that those behaviors are *common*, or at least common enough to be concerning. Lytx's customers, through the use of Lytx's technology, are not interested in knowing the identity of their drivers (which they already know through their own identification methods or scanning Lytx's non-biometric QR codes), but rather when their drivers behave unsafely. (ECF 1, ¶¶ 4-6.) In other words, Lytx's technology collects and analyzes photographs or frames of data, which is the exact opposite of BIPA-covered biometrics. BIPA regulates biometric identifiers unique to individuals. 740 ILCS 14/5(c). Lytx analyzes information common among them, behavior so common that the MV+AI algorithm can predict it is unsafe. Simply put, behavior is not biometric and, thus, is not covered by BIPA. In pleading that Lytx violated BIPA by collecting data BIPA does not regulate or govern, plaintiff has pled himself out of court.

Nor can plaintiff argue that he should get a crack at discovery, for any such discovery would amount to an unjustifiable fishing expedition. "Allowing [cases] to proceed absent factual allegations that match the bare-bones recitation of the claims elements would sanction a fishing

expedition costing both parties, and the court, valuable time and resources." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 604 (7th Cir. 2009); *see also Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *5 (N.D. Ill. July 1, 2020) ("Plaintiff argues that . . . they should get a crack at discovery before the Court dismisses this complaint. This argument has it backwards. The Court must dismiss speculative suits 'lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'") (quoting *Twombly*, 550 U.S. at 558).[3]

This case illustrates the *Iqbal* court's rationale. Plaintiff chose to plead this case as a large class action. Discovery would be time-consuming and expensive, and it would impose a heavy burden on the parties and the Court. A defendant "should not be burdened with the heavy costs of pretrial discovery that are likely to be incurred in a complex case unless the complaint indicates that the plaintiff's case is a substantial one." *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009). Because the Complaint is pled as a putative class action, it would require time-consuming and expensive discovery despite its simplicity, its simplicity being that the Privacy Act simply does not contemplate the Complaint's allegations. Therefore, plaintiff's Complaint should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss plaintiff's Complaint with prejudice and grant Lytx whatever relief the Court deems equitable and just.

---

[3] In other BIPA cases involving technology, plaintiffs have conducted extensive research on the products involved, which is reflected in their complaints. *See, e.g.*, *Barnett v. Apple, Inc.*, No. 2021 CH 3119 (Cir. Ct. Cook Cty) (BIPA complaint containing 38 footnotes related to the technology at issue), attached as Exhibit 1; *see also Miracle-Pond v. Shutterfly, Inc.*, 1:2019 cv 4722, ECF 1-1 (N.D. Ill.) (citing publicly-available information about the defendant's product).

13

Dated: March 9, 2022                              Respectfully submitted,

                                                  By:    /s/ Anne E. Larson
                                                         One of the Attorneys for Defendant
                                                         Lytx, Inc.

Anne E. Larson (ARDC No. 6200481)
Zachary A. Pestine (ARDC No. 6324485)
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:    312.558.1253
Facsimile:    312.807.3619
*anne.larson@ogletree.com*
*zac.pestine@ogletree.com*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on March 9, 2022, she filed the foregoing ***Memorandum in Support of Defendant's Rule 12(b)(6) Motion to Dismiss*** electronically with the Clerk of Court using the ECF system, which sent notification to the following:

>David Fish
>Fish Potter Bolaños, P.C.
>200 East 5th Avenue, Suite 123
>Naperville, IL 60563
>*dfish@fishlawfirm.com*
>
>Douglas M. Werman
>Bernard Schott
>Werman Salas P.C.
>77 W. Washington St., Suite 1402
>Chicago, Illinois 60602
>*dwerman@flsalaw.com*
>*bschott@flsalaw.com*
>
>***Attorneys for Plaintiff***

/s/ Anne E. Larson
One of the Attorneys for Defendant
Lytx, Inc.
