**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATHANIEL TIMMONS and JAMES CAVANAUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYTX, INC., a Delaware corporation, and GEMINI MOTOR TRANSPORT, L.P, an Oklahoma company<br><br>Defendants. | ) | **Jury Trial Demanded**<br><br>Case No.: 1:21-cv-05427<br><br>Honorable Edmond E. Chang |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Nathaniel Timmons and James Cavanaugh, individually and on behalf of all other persons similarly situated, by and through their attorneys, bring this Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., against Defendants Lytx, Inc. ("Lytx") and Gemini Motor Transport, L.P. ("GMT") and allege on personal knowledge, due investigation of counsel, and, where indicated, on information and belief as follows:

**NATURE OF THE ACTION**

1. Lytx is a technology company that provides facial recognition software and sensors to monitor and manage drivers of commercial fleets and industrial operations. Its business model relies on identifying and capturing the actions of its customers' drivers to monitor their fatigue and level of distraction by placing a camera on them.

2. GMT is a nationwide for-hire fuel and specialty products motor carrier headquartered in Oklahoma City, Oklahoma. It operates more than 1,050 trucks and employs

approximately 1,200 drivers across the United States. It installed driver-facing Lytx cameras to monitor its employees, including Timmons, as early as in 2020.

3. One of Lytx's products is an in-vehicle video camera device that incorporates machine vision and artificial intelligence ("MV+AI Technology"). https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence (describing MV+AI Technology incorporated in all dash cam devices) (unless other indicated, all links last visited November 8, 2022).

4. These actions violate BIPA, which forbids Defendants from collecting, storing, and using Plaintiffs' and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (collectively, "biometrics") without obtaining informed written consent or providing the requisite data retention and destruction policies.

5. Plaintiffs did not provide any consent, let alone informed written consent, and Defendants do not appear to provide the public-facing data retention and destruction policies required by BIPA.

6. The Illinois Legislature codified within BIPA that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

---

[1] "Biometric identifier" means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

[2] "Biometric information" is "any information regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

7. To protect the public from these risks and serve the "public welfare, security, and safety," 740 ILCS 14/5(g), the Illinois Legislature enacted BIPA.

8. Notwithstanding BIPA's straightforward requirements, Defendants disregard Plaintiffs' and other similarly situated individuals' statutory rights when Defendants obtain and possess their information without informing them in writing that biometric identifiers or information will be collected or stored. *See* 740 ILCS 14/15(b).

9. Defendants further violate Plaintiffs' and other similarly situated individuals' rights when they fail to inform them in writing of the specific purpose and length of term for which they would collect, store, and use the biometric identifiers and/or biometric information obtained from Lytx's devices that were used to recognize their faces. *See id.*

**PARTIES**

10. Plaintiff Timmons is, and has been at all relevant times, a resident and citizen of Illinois.

11. Plaintiff Cavanaugh is, and has been at all relevant times, a resident and citizen of Illinois.

12. Defendant Lytx is a corporation organized and existing under the laws of Delaware and headquartered in California.

13. Defendant GMT is a limited partnership organized and existing under the laws of Oklahoma and headquartered in Oklahoma.

**JURISDICTION AND VENUE**

14. This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants did business in Illinois, were registered to do business in Illinois, and committed the statutory violations alleged in this Complaint against individuals located in Illinois.

15. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states, there are estimated to be thousands of potential class members, and over $5,000,000 is in controversy.

16. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to this action took place here.

## FACTUAL BACKGROUND

### I. The Illinois Biometric Information Privacy Act.

17. In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it comes to [their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

18. BIPA protects biometric identifiers, which include retina and iris scans, voiceprints, fingerprints, scans of hand geometry, and—most importantly here—scans of facial geometry. *See* 740 ILCS 14/10. It also protects biometric information, which is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

19. BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

20. Altogether, BIPA protects individuals' biometric identifiers and biometric information by requiring private entities to follow certain prerequisites to obtain consent before they collect, send, transmit, or disclose the information.

## II. Defendants Violate the Illinois Biometric Information Privacy Act.

21. Defendants openly and intentionally violate BIPA. Lytx, as part of its business model, sells to and equips commercial freight truck companies like GMT with a driver monitoring system that monitors drivers who may be exhibiting signs of distraction.

22. In 2020, GMT, upon information and belief, installed Lytx cameras that monitored its drivers' faces, including Timmons', in its fleet of trucks.

23. These cameras are known as "DriveCam" and are a product that Lytx offers which combines dash cam footage of drivers' faces and MV+AI Technology to monitor whether drivers are engaging in distracted driving.

24. The following is a picture of Lytx's in-vehicle camera device called the DriveCam Event Recorder Unit:




https://www.lytx.com/en-us/fleet-management/drivecam.

25. The DriveCam device mounts to the inside of the vehicle windshield and records video of the road ahead and inside the vehicle. *Id.*

26. MV+AI Technology monitors drivers to "identify distraction and risk, both inside and outside of the vehicle, including cell phone use, eating or drinking, smoking, seat belt use, [and] general inattentiveness . . ."[3] Lytx's application then provides voice alerts to the drivers to alert them to the perceived issue.

27. The following screenshot from a video on Lytx's website illustrates the MV+AI Technology capturing a face scan and other data to identify distracted driving:[4]

[3] https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence.

[4] This screenshot from Lytx's website was taken October 7, 2021 and was included in the complaint filed by Cavanaugh on October 13, 2021. Dkt. 1, ¶ 9. Lytx has since altered the graphic in its promotional video to remove the grid "scanning" pattern from the driver's face and body. Lytx also added the conclusory statement at the bottom of its promotional videos: "Lytx MV+AI distraction detection and alerting technology is designed to respect driver privacy




28. To accurately monitor drivers to determine whether they are using their cell phones, eating or drinking, smoking, wearing their seat belt, or becoming fatigued, the MV+AI Technology necessarily must "see and recognize" the driver's face (the machine vision) and "interpret and decide" (the artificial intelligence) whether they are engaging in distracted driving.[5]

29. In fact, Lytx states that its MV+AI Technology is "backed by a peerless database of commercial driving behaviors, representing more than 185 billion miles driven in all types of vehicles and road conditions—validated by professional analysts."[6] Or, put differently, Lytx has

---

because it does not collect, store, or use biometric identifiers or biometric information (i.e. scans of facial geometry)." This self-serving legal conclusion does not, upon information and belief, reflect the way MV+AI Technology actually functions, which is by collecting drivers' biometric data. *See* https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence.

[5] https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence.

[6] https://www.lytx.com/en-us/about-us/our-technology/machine-vision-artificial-intelligence.

humans review images of drivers' faces and behaviors, and who then feed that information into the artificial intelligence to teach it about what is and is not an action worth triggering an alert.

30. Thereafter, upon information and belief, when drivers like Plaintiffs get behind the wheel with a Lytx camera on them, the camera constantly scans their faces to identify relevant portions of their face, body, arms, etc. Using this information, coupled with its artificial intelligence, the Lytx camera is able to determine what the driver is actually doing by looking at their face. It can tell whether a driver is putting food into their mouth, or taking a sip from a drink, or if their eyes are on a cellular telephone instead of the road.

31. Each of these actions relies on capturing a driver's face and recognizing their facial features—that a mouth is a mouth, a nose is a nose, etc.—using the individual's unique facial geometry.

32. In doing so, Defendants' facial recognition technology captures, collects, stores, and uses Plaintiffs' and Class Members' biometric information.

33. The scale of Lytx's collection of biometric data is massive: according to Lytx, the company contracts with 4,800 clients to monitor "1.6 million drivers across the globe."[7] Its "devices capture 3 billion miles of driving data each month" which the Company's artificial intelligence uses to identify and interpret driving scenarios based on continuous, live scans of drivers as they work.[8]

34. Drivers whose employers require them to use a Lytx DriveCam have their biometric data harvested every minute they are behind the wheel. Upon information and belief,

[7] https://www.lytx.com/en-us/our-clients/who-we-serve.
[8] https://www.lytx.com/en-us/about-us/our-technology.

the "DriveCam" transmits its footage online and Lytx provides customers like GMT with a log-in so that they can monitor the video footage.[9]

**III. Defendants Do Not Have Plaintiffs' and Class Members' Written Consent to Collect Biometrics**

35. BIPA protects the rights of Plaintiffs and all other similarly situated drivers within Illinois to know and consent to the collection and storage of biometrics, and a right to know how long such risks will persist after termination of their employment. 740 ILCS 14/15(b).

36. Through the scanning of drivers' faces with its facial recognition technology, Lytx collected unique, permanent biometric identifiers and exposed drivers like Plaintiffs to irreversible privacy risks, such as identity theft resulting from a data breach. Lytx then made that same information available to its truck driver company clients, including Defendant GMT.

37. Yet, Defendants never adequately informed Plaintiffs or the Class of their biometric collection practices and never obtained the requisite written consent from Plaintiffs or the Class regarding their biometric practices, and never provided any data retention or destruction policies to Plaintiffs or the Class.

38. GMT never provided Plaintiff with any consent form when it installed the Lytx technology in 2020.

**IV. Named Plaintiffs' Allegations**

39. From roughly August 2015 to October 2020, Timmons worked as a driver in Illinois for GMT.

40. Timmons is an Illinois resident who drove his truck for GMT within Illinois, a fact that GMT and Lytx knew through its geolocation tracking of his truck.

---

[9] https://www.lytx.com/en-us/fleet-management/dash-cam?_ga=2.170096608.1999871576.1640181938-1466546759.1640181938.

41. In 2020, GMT installed a Lytx DriveCam inside its fleet of trucks, including Timmons' truck. Timmons drove his truck as part of his employment with the Lytx DriveCam positioned on his face.

42. GMT required Timmons to use Lytx's DriveCam.

43. Cavanaugh previously worked as a truck driver for non-party Quikrete, a manufacturer of packaged concrete, in Elburn, Illinois.

44. Cavanaugh is an Illinois resident and drove his truck for Quikrete within Illinois, a fact that Lytx knew through its geolocation tracking of his truck.

45. Quikrete installed Lytx's DriveCam in its trucks, including the one Cavanaugh drove. Cavanaugh drove his truck as part of his employment with the Lytx DriveCam positioned on his face.

46. During their employment, Lytx, upon information and belief, extracted biometric identifiers from Plaintiffs' faces while they drove and stored them online for their employers to view. Thereafter, the Lytx Camera automatically performed a facial recognition of Plaintiffs to identify them by extracting biometric identifiers from their faces and comparing those biometric identifiers against the previously extracted and stored biometric identifiers for a match.

47. During their employment, Defendants, upon information and belief, extracted biometric identifiers from Timmons' face while he drove and stored them online for GMT to view. Thereafter, the Lytx Camera automatically scanned Timmons' face to identify him by extracting biometric identifiers from his face again and comparing those biometric identifiers against the previously extracted and stored biometric identifiers for a match.

48. GMT required Timmons to use Lytx's DriveCam.

49. Plaintiffs never consented, agreed or gave permission—written or otherwise—to Lytx for the collection or storage of their unique biometric identifiers or biometric information. Nor did Timmons consent, agree or give such permission to GMT.

50. Further, Lytx never provided Plaintiffs with, nor did they ever sign, a written release allowing Lytx to collect or store their unique biometric identifiers or biometric information. Nor did GMT provide Timmons such a release.

51. Likewise, Lytx never provided Plaintiffs with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of their unique biometric identifiers or biometric information. Nor did GMT provide Timmons with such a disclosure or opportunity.

## CLASS ALLEGATIONS

52. **Class Definition:** Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of similarly situated individuals, defined as follows (the "Classes"):

> **Lytx Class:** All individuals who, while present in the State of Illinois, had their biometric information and/or biometric identifiers, including their face geometry, collected, captured, used, transmitted, disseminated, stored or otherwise obtained by Lytx.
>
> **GMT Class:** All individuals who, while present in the State of Illinois, had their biometric information and/or biometric identifiers, including their face geometry, collected, captured, used, transmitted, disseminated, stored or otherwise obtained by GMT.

53. Plaintiffs Timmons and Cavanaugh seek to represent the Lytx Class. Plaintiff Timmons alone seeks to represent the GMT Class.

54. **Numerosity:** Pursuant to Rule 23(a)(1), the number of persons within the Classes is substantial, believed to amount to hundreds of persons, particularly given the number of drivers

that GMT employs and Lytx's claims that it has 4,800 customers and 1.6 million drivers across the globe. It is, therefore, impractical to join each Class Member. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendants' records.

55. **Commonality, Predominance, and Typicality:** Pursuant to Rule 23(a)(2)-(3) and Rule 23(b)(3), there are well-defined common questions of fact and law that exist as to all Class Members, and that predominate over any questions affecting only individual Class Members. These common legal and factual questions do not vary across Class Members, and which may be determined without reference to the individual circumstances of any individual. They, include, but are not limited to:

(a) whether Defendants collected or otherwise obtained Plaintiffs' and Class Members' biometric identifiers or biometric information;

(b) whether Defendants properly informed Plaintiffs and Class Members that they collected, used, and stored their biometric identifiers or biometric information;

(c) whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and Class Members' biometric identifiers or biometric information;

(d) whether Defendants used Plaintiffs' and the Class Members' biometric identifiers or biometric information to identify them;

(e) whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently.

56. **Adequate Representation:** Pursuant to Rule 23(a)(4), Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously

prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Classes, additional claims as may be appropriate, or to amend the Class definitions to address any steps that Defendants took.

**COUNT I – FOR DAMAGES AGAINST LYTX**
**VIOLATION OF 740 ILCS 14/1 *ET SEQ.* – BIOMETRIC INFORMATION PRIVACY ACT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASSES)**

57. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

58. Lytx is a "private entity" under BIPA. *See* 740 ILCS 14/10.

59. Plaintiffs are individuals who have had their "biometric identifiers" captured and/or collected by Lytx, as explained in detail in above. *See* 740 ILCS 14/10.

60. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

61. By collecting, capturing, storing, and/or using Plaintiffs' and Class Members' biometric identifiers and biometric information as described herein, Lytx violated Plaintiffs' and Class Members' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

62. Additionally, Lytx systematically and automatically collected, captured, used, and stored Plaintiffs' and Class Members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

63. Moreover, Lytx never informed Plaintiffs and never informed any Class Member in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Lytx inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

64. Unlike other Illinois companies, Lytx failed to take notice and follow the requirements of the Biometric Information Privacy Act even though the law was enacted in 2008 and numerous articles and court filings about the law's requirements were published before Lytx committed the legal violations alleged in this Complaint.

65. On behalf of themselves and the Lytx Class, Plaintiffs seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Lytx to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein pursuant to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II – FOR DAMAGES AGAINST GMT**
**VIOLATION OF 740 ILCS 14/1 *ET SEQ.* – BIOMETRIC INFORMATION PRIVACY ACT**
**(ON BEHALF OF PLAINTIFF TIMMONS AND THE GMT CLASS)**

66. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67. GMT is a "private entity" under BIPA. *See* 740 ILCS 14/10.

68. Plaintiff Timmons is an individual who has had his "biometric identifiers" captured and/or collected by GMT, as explained in detail in above. *See* 740 ILCS 14/10.

69. Plaintiff Timmons' biometric identifiers were used to identify him and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

70. By collecting, capturing, storing, and/or using Plaintiff Timmons' and GMT Class Members' biometric identifiers and biometric information as described herein, GMT violated Plaintiff Timmons' and GMT Class Members' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

71. Additionally, GMT systematically and automatically collected, captured, used, and stored Plaintiff Timmons' and GMT Class Members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

72. Moreover, GMT never informed Plaintiff Timmons or any GMT Class Member in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did GMT inform Plaintiff Timmons and the GMT Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

73. Unlike other Illinois companies, GMT failed to take notice and follow the requirements of the Biometric Information Privacy Act even though the law was enacted in 2008 and numerous articles and court filings about the law's requirements were published before GMT committed the legal violations alleged in this Complaint.

74. On behalf of himself and the GMT Class, Plaintiff Timmons seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff Timmons and the GMT Class by requiring GMT to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described

herein pursuant to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Nathaniel Timmons and James Cavanaugh, on behalf of themselves and the proposed Classes, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Lytx Class and Timmons as the representative for the GMT Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding liquidated damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, liquidated damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Classes, including, *inter alia*, an Order requiring Defendants to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E. Awarding Plaintiffs and Class Members their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

F. Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiffs demand a jury trial for all issues so triable.

Dated: November 10, 2022

Respectfully submitted,

/s/ *Jason L. Lichtman*
Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Michael Tresnowski
**WERMAN SALAS P.C.**
77 W. Washington Street, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

David Fish
Mara Baltabols
**FISH POTTER BOLAÑOS, P.C.**
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
(630) 355-7590

Jason L. Lichtman
Sean A. Petterson
Muriel J. Kenfield-Kelleher
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street,
Suite 2100
Chicago, Illinois 60606
(866) 252-0878
*Attorneys for Plaintiffs*