# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL TIMMONS individually and on behalf of all others similarly situated, | ) ) ) | No. 1:21-CV-05427 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Judge Edmond E. Chang |
| GEMINI MOTOR TRANSPORT, L.P., | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Nathaniel Timmons is a truck driver who drove for Gemini Motor Transport, a motor transportation company. R. 49, Am. Compl. ¶¶ 2, 39–40.[1] He brings a proposed class action alleging that Gemini's use of a video-camera monitoring system to monitor truck drivers captures the drivers' biometric information without consent, in violation of the Illinois Biometric Information Privacy Act (commonly referred to as "BIPA"), 740 ILCS 14/15(b). Gemini now moves to dismiss, arguing that Timmons

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d), which requires only minimal diversity of citizenship. Timmons is a citizen of Illinois. Am. Compl. ¶ 10. Gemini is a limited partnership, and the Amended Complaint alleges that Gemini is organized and existing under the laws of Oklahoma and headquartered in Oklahoma. *Id.* ¶ 13. Ordinarily, the citizenship of a partnership is the citizenship of each of its members, but under the Class Action Fairness Act, unincorporated associations take on the citizenship of the state of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10). The jurisdictional requirement of $5,000,000 is also met: Timmons seeks over $1,000 in damages for each proposed class member, and Gemini employs approximately 1,200 drivers across the United States. *Id.* at 1–2, 16. Lastly, violations of Section 15(b) of the Biometric Information Privacy establish an injury in fact for the purposes of Article III standing. *E.g.*, *Bryant v. Compass Grp. USA*, 958 F.3d 617, 626 (7th Cir. 2020) (citing *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.2d 1197, 1206 (Ill. 2019)).

fails to state a claim for which relief can be granted, or, in the alternative, requests that the class definitions be amended to remove non-Illinois residents and that this action be stayed as duplicative of other pending actions. R. 92, Def.'s Mot. As explained below, Timmons has adequately stated the BIPA claim; this action is at too early a stage to amend the class definition; and the case is ready to move forward. So Gemini's motion is denied.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Gemini is a "nationwide for-hire fuel and specialty products motor carrier" that operates more than 1,050 trucks and employs more than 1,200 drivers across the country. Am. Compl. ¶ 2. To monitor its drivers for signs of distracted driving, in 2020, Gemini installed a video monitoring system made by Lytx, Inc., called "DriveCam," inside Gemini's fleet of trucks and required all its drivers to use the technology. *Id.* ¶¶ 41–42.

The Lytx DriveCam is a video camera that mounts to the inside of a driver's windshield; from that vantage point, it simultaneously records a video of the road ahead and of the employee inside driving the truck. *Id.* ¶¶ 24–25. The DriveCam software uses artificial intelligence to detect distraction and risk, both on the road and caused by the driver, including cell phone use, eating or drinking, smoking, seat belt use, "and general inattentiveness." *Id.* ¶ 26. When the system detects a distraction or a risk, the DriveCam app sends a voice alert to the driver with a warning. *Id.*

Timmons alleges that the DriveCam's technology learns drivers' habits and risks by "capturing a driver's face and recognizing their facial features … using the individual's unique facial geometry." *Id.* ¶ 31. The app then "collects, stores, and uses [the drivers'] biometric information," then sends the footage of the drivers online. *Id.* ¶¶ 32, 34. Lytx provides its customers—like Gemini in this case—with login access so Gemini itself can monitor the video footage. *Id.* ¶ 34.

Nathaniel Timmons drove trucks for Gemini in Illinois between August 2015 to October 2020. *Id.* ¶ 39. Timmons alleges that Gemini installed a Lytx DriveCam in his truck in 2020 and required him to use DriveCam when driving. *Id.* ¶¶ 41–42. Timmons claims that DriveCam captured his biometric identifiers while he was driving, compared his identifiers with other drivers' identifiers to enhance DriveCam's facial recognition software, and stored the identifiers online for Gemini to view. *See id.* ¶¶ 29, 33, 46–47. The trucking company did so without receiving consent from Timmons (or any other driver) to collect or store his biometric identifiers or biometric information, and without disclosing the purposes of the data collection or how long the data would be stored. *Id.* ¶¶ 49, 51, 72; 740 ILCS 14/15(b)(3).

Based on these allegations, Timmons brought a proposed class action against Lytx and Gemini for violating the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b). R. 36-1, Timmons Compl. ¶¶ 71–80. In October 2022, Timmons's proposed class action was consolidated with another proposed class action in this District and the two named plaintiffs filed an amended complaint against Lytx and Gemini.

R. 41, 10/29/2022 Order; Am. Compl.[2] Eventually, in a similar case filed in the Southern District of Illinois, Lytx reached a class-wide settlement in connection with this matter, and it received preliminary approval in January 2025. R. 118, 01/21/2025 Status Report. The final approval hearing is set for July 24, 2025, so the Plaintiffs here voluntarily dismissed Lytx from this case, R. 119, 01/22/2025 Notice of Voluntary Dismissal;R. 120, 01/22/2025 Order.

Gemini now remains as the sole defendant and moves to dismiss Timmons's claims against it. Gemini argues that Timmons's claims are preempted by federal transportation laws; Timmons seeks to improperly apply BIPA extraterritorially; Timmons fails to adequately state a claim for relief; and at the least the proposed class definition should be amended. R. 93, Def.'s Br.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has

---

[2]The other named plaintiff in the amended complaint, James Cavanaugh, did not drive for Gemini. Am Compl. ¶¶ 43–45. Cavanaugh's claims thus were effectively dismissed without prejudice under the voluntary dismissal filed after preliminary approval of the settlement with Lytx, R. 119.

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

Timmons alleges that Gemini violated the Biometric Information Privacy Act when the company required him to use DriveCam, which he says collected and captured his biometric information without first obtaining his consent. Am. Compl. The Act protects an individual's privacy interest in their biometric data. *Rosenbach v. Corp.*, 129 N.E.2d at 1206; 740 ILCS 14/5(a)–(b), (d). BIPA's goal is to protect "against the threat of irreparable privacy harms, identity theft, and other economic injuries

arising from the increasing use of biometric identifiers and information by private entities." *Bryant*, 958 F.3d at 619.

The statute "imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers." *Rosenbach*, 129 N.E.2d at 1199; *see also* 740 ILCS 14/10 (providing definitions for "biometric identifier" and "biometric information"). BIPA also creates a private cause of action for any person harmed by a violation of the statute. 740 ILCS 14/20. Different provisions protect against different kinds of violations. Relevant here is Section 15(b), which requires a private entity that captures, collects, or otherwise obtains biometric identifiers or information to first receive the individual's informed, written consent. 740 ILCS 14/15(b). The purpose of Section 15(b) is to help individuals "understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant*, 958 F.3d at 626.

## A. Preemption

Gemini maintains that Timmons's claims are preempted by federal transportation-safety laws and regulations. Def.'s Br. at 5–13. The Supremacy Clause of the United States Constitution deems federal law the "supreme law of the land" notwithstanding any state law to the contrary. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015) (quoting U.S. Const. art. VI, cl. 2). This means that when the two laws are incompatible, Congress may preempt or displace a state law through federal legislation, either with express language in the statute, or impliedly even if the statute does not clearly say so. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002); *Aux Sable*

6

*Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (explaining that conflict preemption, a kind of implied preemption, occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). Preemption is an affirmative defense, but the Court may consider it if the pleaded facts are sufficient to warrant resolution of the issue at the pleading stage. *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018). Here, however, the allegations are sufficient to resist dismissal on preemption grounds. More facts are needed to determine whether BIPA is preempted by the federal laws on which Gemini relies.

### 1. Federal Aviation Administration Act

First, Gemini argues that Timmons's BIPA claim is expressly preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1). Def.'s Br. at 6–11. Gemini contends that complying with BIPA in this case would require significant changes to Gemini's nationwide business practices, which would ultimately affect its rates, routes, or services, which are supposed to protected by the Federal Aviation Act against State interference. *Id.* at 7–10. Timmons counters that the facts that Gemini relies on—that is, the cost of changing its business practices to comply with BIPA—are outside the current record and thus cannot be considered at the pleading stage. R. 100, Pl.'s Resp. at 6–7.

Congress deregulated the trucking industry in 1980 and later sought to preempt State trucking regulation to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504

U.S. 374, 378 (1992) (describing the purpose of analogous statute on which the Federal Aviation Act was modeled). Borrowing language from another statute called the Airline Deregulation Act of 1978, the Federal Aviation Act provides that a "State … may not enact or enforce a law … related to a *price, route, or service* of any motor carrier … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added).

Given the breadth of this preemption provision—which disallows any State regulation of a law "related to" price, route, or service, § 14501(c)(1)—the "preemptive scope of [the Act] is broad." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1051 (7th Cir. 2016) (citing *Morales*, 504 U.S. at 383–84). Of course the Federal Aviation Act preempts a state law if the state law has a "direct connection with or specifically references a carrier's prices, routes, or services." *Costello*, 810 F.3d at 1051. But the "related to" breadth of the preemption provision goes further: "a state law may be preempted even if the law's *effect* on prices, routes, or services is only indirect." *Id.* (cleaned up) (emphasis in original). When a state law has a "significant impact" on Congress's deregulatory objective, then preemption applies. *Id.*; *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (quoting *Morales*, 504 U.S. at 390)). At the same time, the scope of the preemption provision has its limits. State laws "that affect fares in only a tenuous, remote, or peripheral manner" are not preempted. *Rowe*, 552 U.S. at 371 (cleaned up).

To illuminate the scope of Federal Aviation Act preemption, consider two examples from the Supreme Court. In *Rowe v. New Hampshire Motor Transport*

8

*Association*, the Supreme Court held that the State law at issue was preempted because it required tobacco shippers to offer services that the market did not already provide and that the carriers did not want to offer. 552 U.S. at 372. The State law would have called for Maine-licensed tobacco sellers to use a delivery service that confirmed the purchaser's identity, legal age, signature, and government-issued photo identification—a service that did not exist. *Id.* at 368–69. The Supreme Court concluded that the Federal Aviation Act preempts exactly the kind of law that sought to change the services that carriers offered. *Id.* at 372.

In *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014), the outcome was again preemption (under the analogous Airline Deregulation Act preemption provision), but the Supreme Court added some reasoning that set a potential limit on preemption. A frequent flier sued then-airline Northwest under Minnesota common law for breach of the implied covenant of good faith and fair dealing after Northwest terminated the passenger's elite frequent-flier status. *Id.* at 278–79. The Supreme Court ultimately held that the claim was preempted because applying it would "enlarge" the "contractual agreement" between the parties. *Id.* at 289. The common law claim, as recognized in Minnesota, was required by law to apply to every contract and could not be contracted around, that is, Minnesota law forbade the contracting parties to agree not to apply it. *Id.* at 287–88. Because the common law claim would add to the contracts between the parties, the clam was preempted. *Northwest, Inc.*, 572 U.S. at 288.

But the Supreme Court did recognize a limit to preemption. The airline argued that *all* common law claims for breaches of implied covenants and good-faith dealing

should be preempted across-the-board in all States. *Northwest, Inc.*, 572 U.S. at 288. But the Supreme Court refused to do so, explaining that if a particular State's common law "permit[ed] an airline to contract around those rules"—unlike Minnesota, which disallowed any exemption—then the claim would not be preempted in that State. *Id.* In those permissive States, the airline could "specify that the agreement does not incorporate the covenant." *Id.* Yes, inserting that exemption could impose transaction costs on the airline, but the airline could decide whether the costs outweighed the benefits. *Id.* Taken together, *Rowe* and *Northwest* reveal that the Federal Aviation Act preempts State laws that either directly expand on the protected categories (that is, prices, routes, or services) by explicitly altering a transportation contract or implicitly add to those contracts by way of a generally applicable law (or the State's common law) that cannot be contracted out of by the parties and that would inflict a significant impact on deregulation.

With those principles in place, Gemini's dismissal motion must fail on the current record. As a matter of law, BIPA does not seek to *directly* regulate prices, routes, or services of the transportation industry; instead, BIPA creates a generally applicable framework to protect biometric information in all manner of settings, from point-of-sale consumer transactions to employees to social media, and on and on. And at the pleading stage, the Amended Complaint sets the facts, with Timmons entitled to reasonable inferences in his favor. So there is no current basis to conclude that applying BIPA to the DriveCam system has a significant impact on Gemini's prices, routes, or services. Discovery is needed—at least fact discovery and almost surely

expert discovery—to determine whether applying Section 15(b) of BIPA to DriveCam would significantly impact prices, routes, or services. Remember that BIPA does not outright forbid under all circumstances the collection, capture, or obtaining biometric data—a company can do those things if it provides written notice and obtains a written release. 740 ILCS 14/15(b)(1)–(3). Maybe the costs of giving notice and obtaining a release would significantly impact prices, routes, or services. Or maybe not. It is true that Lytx appears to have agreed to erect a geofence disabling DriveCam as part of the settlement in the Southern District of Illinois. R. 122, Def.'s Notice of Supp. Auth. And it is disconcerting that a driver-safety technology might end up being disabled when drivers are in Illinois, potentially endangering the truck drivers, other drivers and passengers on Illinois roads, pedestrians, cargo, and so on. But what precisely that would mean for Gemini's operations is not something that the Court can decide without more facts. That means discovery is needed. The Federal Aviation Act cannot preempt this particular BIPA claim at the pleading stage.

## 2. Hazardous Materials Act

Gemini next argues that the Hazardous Materials Act, 49 U.S.C. § 5125(a)(2), preempts BIPA because DriveCam monitors for "the exact behaviors the [Hazardous Materials Act] targets." Def.'s Br. at 11–13. In response, Timmons contends that the Hazardous Materials Act governs only (no surprise) the transportation of hazardous materials, so at the most the Act can only preempt BIPA when applied to the transportation of hazardous materials. 49 U.S.C. § 1501; Pl.'s Resp. at 11–12.

11

The Hazardous Materials Act permits the Secretary of Transportation to "prescribe regulations for the safe transportation, including security, of hazardous materials in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(b)(1). The statute covers transporters of hazardous materials and others connected to that transportation. *Id.* The purpose of the statute and its regulations is to implement "a uniform national scheme of regulation regarding the transportation of hazardous materials." *Noffsinger v. Valspar Corp.*, 60 F. Supp. 3d 907, 911 (N.D. Ill. 2014) (citing *Roth v. Norfalco LLC*, 651 F.3d 367, 370 (3d Cir. 2011)). The Hazardous Materials Act contains two preemption provisions: the first disallows a State law if complying with the State law at the same as complying with a federal hazardous-materials transportation regulation "is not possible." 49 U.S.C. § 5125(a)(1). Impossibility being what it is (a very high bar, most likely requiring a direct and explicit conflict), Gemini does not really rely on this provision. But there is a second preemption provision: "if the requirement of the State … as applied or enforced, *is an obstacle* to accomplishing and carrying out" federal hazardous-material transportation laws or regulations, then the state law is preempted. 49 U.S.C. § 5125(a)(2) (emphasis added). Gemini contends that complying with BIPA will pose an obstacle to carrying out the federal hazardous-materials regulations that combat distracted driving. Def.'s Br. at 12–13.

As an initial matter, it is not at all clear how many, if any, truck drivers in the proposed class transport hazardous materials. Nor does Timmons allege that he himself transported hazardous materials. So Gemini's reliance on the Hazardous Materials Act would not—even if it were a winning argument on a subset of the class—

knock out Timmons's individual claim or the proposed class in its entirety. More to the point, just like with Federal Aviation Act preemption, the record as it now stands is limited to the Amended Complaint's allegations. Discovery is needed before determining whether complying with BIPA's notice-and-release requirements would pose an obstacle to federal regulation of hazardous-materials transportation.

### 3. Federal Motor Carrier Safety Act

Gemini's third and final preemption argument is that the driver-safety requirements of the Federal Motor Carrier Safety Act and its implementing regulations create implied preemption of BIPA. Def.'s Br. at 13–16. The pertinent Federal Motor regulations cover carriers of household goods. 49 C.F.R. § 375.401. The Motor Carrier Act, 49 U.S.C. § 14104(a), authorizes the Department of Transportation to promulgate these regulations. *Mervyn v. Atlas Van Lines, Inc.*, 882 F.3d 680, 680 (7th Cir. 2018) (citing 49 U.S.C. § 14104(a)). Under the Act, the Transportation Department has issued a bevy of regulations to prevent impaired truck driving and to minimize distracted driving by truck drivers. Def.'s Br. at 12.

Even though there is no explicit statutory preemption in the pertinent parts of the Motor Carrier Act, Gemini relies on implied preemption to argue that applying BIPA to Gemini's truck drivers would pose an obstacle to fulfilling the purpose of the Motor Carrier safety regulations. Def.'s Br. at 13–16. Again, discovery is needed to examine that contention. The limited facts in the Amended Complaint do not answer yes or no on whether BIPA would pose an obstacle to the federal regulations. To be sure, the importance of the panoply of safety regulations is obvious. Trucks and their

13

cargo can weigh several tons, even dozens of tons, all traveling at high speeds. But it is not appropriate to resolve whether BIPA undermines those important regulations at the dismissal-motion stage. The complaint does not include any allegations indicating that the Federal Motor Carrier Safety Regulations apply. The Court will reevaluate this argument too if discovery reveals otherwise.

## B. Extraterritorial Application

Gemini next argues that if BIPA is not preempted by the three transportation-related federal laws, Timmons's claim—which is advanced on behalf of truck drivers of an interstate-transportation company—would require extraterritorial application of BIPA. Def.'s Br. at 16–19. Though Gemini is right that, as a matter of law, BIPA does not apply to conduct that happens outside of Illinois, *see, e.g.*, *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (Ill. 2005)), the pleading stage is not the right time to definitively determine whether the alleged violations of BIPA happened inside Illinois or instead outside. The Illinois Supreme Court instructs that "there is no single formula or bright-line test for determining whether a transaction occurs within this state." *Avery*, 835 N.E.2d at 854. Instead, the test is whether "the circumstances relating to the transaction occur primarily and substantially" within Illinois. *Id.* at 853. Courts consider factors like the residency of the plaintiff, the location of the harm, where the communications between parties were sent and received, and where a company's policy is carried out. *Id.* at 854.

14

Confined to the Amended Complaint, Timmons has plausibly pleaded that the alleged BIPA violations happened inside Illinois. In particular, Timmons alleges that the harm happened when his biometric data was collected (without his consent) while driving in Illinois. Am. Compl. ¶¶ 39–51; Pl.'s Resp. at 15–18. Indeed, Timmons emphasizes that he only intends to hold Gemini liable for BIPA violations that occurred "primarily and substantially" within Illinois. Pl.'s Mot. at 17 (cleaned up); Def.'s Mot. at 16. Gemini argues that for many proposed class members (though not for Timmons himself), the company would have to give notice and to obtain the release *before* the drivers entered Illinois, so that is the equivalent of requiring extraterritorial application. But there is no violation of BIPA at all if there is no *obtaining* of the biometric data, and Timmons is limiting the claim to obtaining the data while driving *in Illinois*. So Timmons does not appear to be trying to project Illinois's power outside of Illinois: if the truck driver does not enter Illinois, then no BIPA violation will happen.

And this is true whether the proposed class members are Illinois residents or not. Gemini argues that BIPA should only apply to Illinois residents. Def.'s Br. at 16–17. But the Illinois Supreme Court disclaimed any bright-line test like that. *Avery*, 835 N.E.2d at 854. Maybe discovery will show that Illinois's interest in enforcing BIPA should be confined to Illinois residents in this truck-driver setting, perhaps because it is too burdensome on interstate-transportation companies to comply as to non-Illinois-residents. But that is not clear at all at this time. Consistent with the *Avery* avoidance of a bright-line test, the Illinois state legislature might very well have intended for BIPA to cover non-resident visitors and workers to encourage them

15

to visit and do business here. Consider the collection of fingerprints by the Six Flags theme park in Gurnee, Illinois. *See Rosenbach*, 129 N.E.3d at 1200. Gurnee is much closer to many towns in Wisconsin than to most of Illinois. Illinois arguably has a strong interest in protecting non-residents in that context. How those interests and costs play out in the truck-driver setting cannot be answered on the limited facts of the Amended Complaint.

### C. Sufficiency of the Allegations

### 1. Definition of "Biometric"

Turning to the merits, Gemini asserts that Timmons did not plausibly allege that Gemini collects any biometric identifier or biometric information from him. Def.'s Br. at 19–21. Gemini takes issue with Timmons's reliance on Lytx's public-facing website, contending that the inferences drawn from the website are speculative and misrepresent the information. *Id.* Timmons responds that he alleges all that is needed: DriveCam continuously scans and recognizes a driver's unique facial geometry, and that the information Lytx obtained made available to Gemini. Pl.'s Resp. at 19 (citing Am. Compl. ¶¶ 29–31, 36).

The statutory terms at issue are "biometric identifier" and "biometric information." The interpretive analysis begins with the plain meaning of the statute's text. *See Paris v. Feder*, 688 N.E.2d 137, 139 (Ill. 1997). If the text bears a plain meaning, then the interpretation ends there. *People v. Fitzpatrick*, 633 N.E.2d 685, 687 (Ill. 1994). In some cases, as in this one, the overall structure of the statute might provide guidance. *See Abramson v. Illinois Dep't of Pro. Regul.*, 606 N.E. 2d 1111, 1118 (Ill.

16

1992). When interpreting Illinois law, there is a general presumption that identical words used in different parts of the same statute have the same meaning. *Baker v. Salomon*, 334 N.E.2d 313, 316 (Ill. 1975).

Starting with the text, BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. And the statute defines "biometric information" as "any information, regardless of how it is captured, converted stored or shared, based on an individual's biometric identifier." *Id.* The definition of "biometric identifier" expressly excludes "photographs" and the definition of "biometric information" expressly excludes "information derived from items or procedures excluded under the definition of biometric identifiers." *Id.* Read together, BIPA "makes clear that a photograph (and perhaps, by extension, a video) is not itself a biometric identifier, and that information 'derived from' a photograph is not biometric information." *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 817(N.D. Ill. 2022). What does qualify, however, is a *scan* of face geometry. 740 ILCS 14/10 (biometric identifier includes a "scan of … face geometry").

Timmons sufficiently alleges that Gemini obtains biometric identifiers and biometric information. He asserts that DriveCam "relies on capturing a driver's face and recognizing their facial features—that a mouth is a mouth, a nose is a nose, etc.— using the individual's unique *facial geometry*." Am. Compl. ¶ 31 (emphasis added). The reasonable inference from this allegation is that DriveCam is scanning the face geometry of drivers, and can identify the particular driver. Taking these allegations as true, Timmons's biometric identifier and biometric information was obtained.

## 2. Definitions of "Possesses" and "Collects"

Gemini next argues that even if Timmons plausibly alleged that *Lytx* obtained biometric data, there is no plausible allegation that *Gemini* obtained it. Def.'s Br. at 21–23. Gemini also contends that Gemini's mere monitoring of the data is not the equivalent of obtaining it. *Id.* at 22. For his part, Timmons again points to the allegations that Gemini itself obtains the biometric data and, in any event, Gemini cannot limit liability to the technology provider when it is Gemini that is the ultimate user of the biometric data. Pl.'s Resp. at 21–22.

As an initial matter, Section 15(b) of BIPA does not require that a defendant "possess" biometric data to trigger a violation. Unlike the other sections of BIPA, which apply to entities "in possession" of biometric data, Section 15(b) applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. 740 ILCS 14/15(a)–(e); *Patterson*, 593 F. Supp. 3d at 824 n.20 (explaining that Section 15(b) does not expressly require possession). Simply put, Section 15(b) does not have an element of possession, so Timmons need not allege that Gemini "possessed" his biometric data.

To successfully allege a Section 15(b) violation, Timmons must plausibly allege that Gemini took an "active step" to "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) (citing 740 ILCS 14/15(b)). The Illinois Supreme Court has explained that the term "possession" in Sections 15(a), 15(c), and 15(d) takes on its ordinary meaning. *People v. Ward*, 830 N.E.2d 556, 561 (Ill. 2005). So those

18

sections apply where a "person has or takes control of the subject property or holds the property at his or her disposal." *Id.* But, that the "Illinois legislature used the term possession in certain sections of BIPA … [and] chose not to include possession in section 15(b)" signifies that there "is a difference between *possessing* and *collecting* biometric information." *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285–86 (N.D. Ill. 2019) (emphasis in original).

Here, the complaint plausibly claims that Gemini—and not just Lytx—obtained and used his data. Contrary to Gemini's argument, Timmons directed some of the allegations directly at Gemini. Most obviously, Gemini is the client of Lytx and directed that the technology be installed in Gemini's fleet of trucks. Am. Compl. ¶ 41. Gemini is the one that required the truck drivers to use Drive Cam. *Id.* ¶ 42. The alleged scans of face geometry were thus done at Gemini's direction, both for use while the drivers were driving and when Gemini would view video recordings later. *Id.* ¶¶ 34, 47. Timmons's allegations plausibly target Gemini as having captured, collected, and obtained the face-geometry scans. The Amended Complaint adequately states a claim against Gemini.

## D. Damages

### 1. Mental State for Statutory Damages

Moving on from escape-liability theories, Gemini next argues that Timmons's request for statutory damages inadequately alleges the requisite mental state under BIPA. Def.'s Br. at 23–25. Not surprisingly, Timmons counters that the mental-state

allegations are sufficient at the pleading stage and that discovery is needed. Pl.'s Resp. at 23–24.

Timmons is right. Section 20 of BIPA lays out the kinds of relief available to parties aggrieved by a violation of the law. For each violation, an aggrieved person may (but not necessarily shall) receive statutory damages in an amount keyed to the mental-state culpability of the defendant: (1) $1000 or actual damages, whichever is greater, for *negligent* violations; or (2) $5,000 or actual damages, whichever is greater, for *reckless* or intentional violations. 740 ILCS 14/20.

Like any other pleading question, context matters. BIPA became effective in October 2008. Timmons alleges that Gemini installed DriveCam in 2020. Am. Compl. ¶ 22. So around 14 years passed between the effective date of BIPA and the installation of DriveCam in, allegedly, over 1,000 trucks and affecting more than 1,200 drivers. *Id.* ¶ 2. With that much time to learn about and to adjust to BIPA, and with the privacy of so many drivers at stake, the Amended Complaint adequately alleges negligence and recklessness at the pleading stage. With just two exceptions, mental states "may be alleged generally." Fed. R. Civ. P. 9(b). The two exceptions to general pleading of mental states—fraud or mistake, Fed. R. Civ. P. 9(b)—are not at issue here. Timmons will need more concrete facts and evidence at the summary judgment stage, but negligence and recklessness for statutory damages is adequately alleged right now.

20

## 2. Standing for Injunctive Relief

Gemini also argues that Timmons (who no longer works for Gemini) and other former employees in the proposed class action lack Article III standing to request injunctive relief. Def.'s Br. at 25–26. Gemini is right. Former employees are no longer subject to Gemini's use of DriveCam, and injunctive relief is only available for harms that happen now and in the future, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Because former employees no longer work for Gemini, there is no possibility that they can be harmed again by the company in this specific way. Timmons and ex-employees cannot pursue injunctive relief.

## E. Class Definition

Finally, Gemini requests that the proposed class definitions be amended to remove non-Illinois residents because the proposed classes are overbroad. Def.'s Br. at 26–28. It is true that the Civil Rule 23 encourages—very generally speaking—early action on class-related issues. Class certification itself should be decided as early as practicable. Fed. R. Civ. P. 23(c)(1)(A) (requiring that the court, at an "early practicable time …, must determine by order whether to certify the action as a class action"). Even before deciding class certification, a court may amend or eliminate class allegations. Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that … require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). But as explained earlier, there is no bright-line exclusion of non-Illinois-residents from this particular BIPA claim. *See supra* Section III.B. Discovery is needed

21

to determine this issue, both on the merits-related question and the class-certification question (which might have separate answers, depending on what the facts show). Put another way, this is not a practicable time to resolve this question.

## IV. Conclusion

Gemini's motion to dismiss, R. 92, is denied. Gemini shall answer the Amended Complaint by April 21, 2025. Given the preliminary approval of the class-action settlement with Lytx in the Southern District of Illinois (and, indeed, even if that case were still ongoing), it is time to move the case forward into discovery. The parties shall confer and file a joint status report with a proposed discovery schedule on April 28, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2025