**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL TIMMONS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-05427 |
| v. | Honorable Edmond E. Chang |
| GEMINI MOTOR TRANSPORT, L.P., an Oklahoma company, | Magistrate Judge Maria Valdez |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT GEMINI MOTOR TRANSPORT, L.P.**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. OVERVIEW OF PLAINTIFF'S CLAIMS AND THE LITIGATION ........................... 2

    A. The *Timmons* Action. ................................................................................... 2

    B. Transfer to the Northern District of Illinois and consolidation with the *Cavanaugh* Action. ..................................................................................... 2

    C. Defendants' motion to dismiss ....................................................................... 3

    D. Mediation and settlement of the Lytx claims. ................................................ 4

    E. The denial of GMT's motion to dismiss and the Settlement. ........................ 5

III. THE SETTLEMENT TERMS ...................................................................................... 5

    A. The Settlement Class ...................................................................................... 5

    B. Monetary Settlement Payment ....................................................................... 6

    C. The Class Notice Plan .................................................................................... 6

    D. Opportunity to Opt-Out and Object, and Appear at Hearing ......................... 7

    E. Scope of Release ............................................................................................ 7

    F. Attorneys' Fees, Litigation Costs, and a Service Award ............................... 7

IV. LEGAL STANDARD ................................................................................................... 8

V. ARGUMENT ............................................................................................................... 9

    A. The proposed Settlement satisfies the standards for Preliminary Approval. ......... 9

        1. Plaintiff and his Counsel zealously represented the Class. ........................ 9

        2. The Settlement is the result of arm's-length negotiation by experienced counsel and is informed by targeted discovery. ................. 10

        3. The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces. ..................... 11

        4. The effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing claims. .......... 12

        5. Class Counsel's request for attorneys' fees is in line with Seventh Circuit standards. ................................................................................... 13

        6. There are no undisclosed side agreements. .............................................. 14

        7. The Settlement treats Settlement Class Members equitably. .................... 14

    B. Conditional certification of the Settlement Class is appropriate. ........................ 15

        1. Plaintiff satisfies the four Federal Rule of Civil Procedure 23(a) prongs. ..................................................................................................... 15

**TABLE OF CONTENTS**
**(continued)**

Page

    a.    Numerosity (FED. R. CIV. P. 23(a)(1)) ......................................... 15

    b.    Commonality (FED. R. CIV. P. 23(a)(2)) .................................... 16

    c.    Typicality (FED. R. CIV. P. 23(a)(3)).......................................... 16

    d.    Adequacy of Representation (FED. R. CIV. P. 23(a)(4)) ............. 17

  2.    The requirements of Rule 23(b)(3) are satisfied. .................................... 17

VI.    THE PROPOSED NOTICE PLAN COMPLIES WITH RULE 23 AND DUE PROCESS ................................................................................................. 18

VII.    SCHEDULING AND FINAL APPROVAL HEARING ................................ 19

VIII.    CONCLUSION.............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 15, 17, 18

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ................................................................................................ 8

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................................ 9

*Bills v. TLC Homes Inc.*,
2020 WL 5982880 (E.D. Wis. Oct. 8, 2020) ...................................................................... 10

*Bradford Hammacher Grp., Inc., Emp. Stock Ownership Plan v. Reliance Tr. Co.*,
2020 WL 13645290 (N.D. Ill. Mar. 12, 2020) ..................................................................... 8

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ..................................................................... 15

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................................... 13

*Carnegie v. Household Int'l., Inc.*,
376 F.3d 656 (7th Cir. 2004) .............................................................................................. 18

*Chambers v. Together Credit Union*,
2021 WL 1948452 (S.D. Ill. May 14, 2021) ...................................................................... 14

*Furman v. At Home Stores LLC*,
2017 WL 1730995 (N.D. Ill. May 1, 2017) ....................................................................... 15

*In re Herff Jones Data Breach Litig.*,
2022 WL 474696 (S.D. Ind. Jan. 12, 2022) ....................................................................... 10

*Hollins v. Church Church Hittle + Antrim*,
2023 WL 4397769 (N.D. Ind. July 7, 2023) ........................................................................ 9

*Kramer v. Am. Bank & Tr. Co.*,
2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ..................................................................... 16

*Messner v. Northshore Univ. HealthSys.*,
669 F.3d 802 (7th Cir. 2012) .............................................................................................. 18

## TABLE OF AUTHORITIES
### (continued)

Page

*Orr v. Shicker*,
    953 F.3d 490 (7th Cir. 2020) ................................................15

*Parker v. Villa of Greenfield LLC*,
    2022 WL 16659191 (E.D. Wis. Nov. 3, 2022) ........................11

*Roberts v. Graphic Packaging Int'l, LLC*,
    2024 WL 3373780 (S.D. Ill. July 11, 2024) ............................8

*Rosenbach v. Six Flags Entm't Corp.*,
    No. 16-CH-13 (Ill. Cir. Ct.) ..................................................13

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
    2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .....................10, 11

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976) ..............................................12

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................18

*In re TikTok, Inc., Consumer Priv. Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ....................................8

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ...............................11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..............................................................16

*Young v. Rolling in the Dough, Inc.*,
    2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ...........................15

*Zhu v. Wanrong Trading Corp.*,
    2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) ......................14

**Statutes**

740 ILCS § 14/20(b)-(c) ............................................................12

**Court Rules**

FED. R. CIV. P. 23(a) ..................................................................15

FED. R. CIV. P. 23(a)(1) .............................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

FED. R. CIV. P. 23(a)(2)............................................................................................16

FED. R. CIV. P. 23(a)(3)............................................................................................16

FED. R. CIV. P. 23(a)(4)............................................................................................17

FED. R. CIV. P. 23(b)(3) ......................................................................................17, 18

FED. R. CIV. P. 23(e)(1) ......................................................................................15, 18

FED. R. CIV. P. 23(e)(2) ..................................................................................... *passim*

FED. R. CIV. P. 23(e)(3).........................................................................................9, 14

Rule 23(e)..................................................................................................................14

**Other Authorities**

*Manual for Complex Litigation* § 21.633 (4th ed. 2024)............................................18

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 (6th
ed. 2024) .............................................................................................................8

## I.     __INTRODUCTION__

Plaintiff Nathaniel Timmons ("Plaintiff" or "Class Representative") and Defendant Gemini Motor Transport, L.P. ("GMT" or "Defendant," and collectively with Plaintiff, the "Parties") have reached a settlement (the "Settlement") that seeks to resolve claims against GMT in the above-captioned action (the "Lawsuit").[1] Pursuant to the terms set forth in the Parties' Settlement Agreement (the "Settlement Agreement" or "Agmt."), Plaintiff now respectfully asks the Court to enter an order preliminarily approving the Settlement, provisionally certifying the Settlement Class (defined below) for settlement purposes, directing notice of the Settlement be disseminated to members of the Settlement Class in the proposed form and manner, and scheduling a Final Fairness Hearing to consider whether the Settlement should be finally approved.

The Settlement requires GMT to pay $40,000 into a non-reversionary, common fund (the "Settlement Fund"), from which Settlement Class Members will receive a Cash Award unless they opt-out of the Settlement. The Settlement is the result of serious, informed, and arm's-length negotiations led by experienced counsel and is a result of zealous advocacy by counsel for both parties, as well as Class Representatives. The Settlement treats all members of the Class equitably; Illinois residents will receive two-and-half times that of non-Illinois residents to account for the fact that non-Illinois residents face a potential extraterritoriality argument.

Plaintiff respectfully seeks preliminary approval of the Settlement, a holding that the Court will likely certify the Settlement Class, and approval to send notice to the Class describing the Settlement and an opportunity to opt-out, object, or otherwise be heard. The Settlement satisfies all criteria for preliminary approval. Plaintiff has conferred with Defendant, and Defendant does not oppose this motion.

---

[1] Unless otherwise indicated, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

## II.    OVERVIEW OF PLAINTIFF'S CLAIMS AND THE LITIGATION

### A.    The *Timmons* Action.

On December 29, 2021, Plaintiff Nathaniel Timmons filed a class action lawsuit against his employer, GMT, and former defendant Lytx, Inc. ("Lytx") in the Circuit Court of Morgan County, Illinois, alleging that they violated BIPA by collecting his biometric information and identifiers without obtaining his written consent. On February 11, 2022, Defendants removed the action to the United States District Court for the Central District of Illinois. *See Timmons v. Lytx Inc., et al.*, No. 1:22-cv-05068 (C.D. Ill.) (the "*Timmons* Action"), ECF No. 1.

In early 2022, Lytx provided informal discovery to Plaintiff Timmons, explaining its technology. *See* Declaration of Sean A. Petterson ("Decl.") ¶ 8. This consisted of letters from Lytx's counsel, detailing why it believed its machine vision and artificial intelligence system did not constitute facial recognition technology. *Id*. Lytx also provided specifications and other internal documents that laid out the high-level functionality of its technology. *Id.* ¶ 9. This informed Plaintiff Timmons' understanding of the technology at issue. *Id.* ¶ 10.

On May 3, 2022, Lytx moved to dismiss the *Timmons* Action. *See Timmons* Action, ECF Nos. 13-14. That same day, GMT filed a joinder in Lytx's motion to dismiss and in the alternative a motion to stay Plaintiff's claims against GMT pending the outcome of *Cavanaugh v. Lytx, Inc.*, No. 1:21-cv-5427 (N.D. Ill.) (the "*Cavanaugh* Action") and *Lewis v. Maverick Transportation LLC and Lytx, Inc.*, No. 3:22-cv-46 (S.D. Ill.) (the "*Lewis* Action"). *Timmons* Action, ECF No. 15. On May 31, 2022, Plaintiff opposed both motions. *Timmons* Action, ECF No. 19.

### B.    Transfer to the Northern District of Illinois and consolidation with the *Cavanaugh* Action.

While the initial motion to dismiss was pending, on June 28, 2022, Lytx moved to transfer the case to the Northern District of Illinois so that it could seek to consolidate it with the

-2-

*Cavanaugh* Action or, alternatively, to stay the case pending the outcome of the *Cavanaugh* Action. *Timmons* Action, ECF No. 24. On August 2, 2022, Plaintiff objected to the transfer because Lytx did not seek to also transfer the claims against GMT. *Timmons* Action, ECF No. 27. That same day, GMT responded to Lytx's motion, arguing that it did not consent to Plaintiff's claims against it being consolidated into the *Cavanaugh* Action. *Timmons* Action, ECF No. 28.

On September 16, 2022, Judge Myerscough transferred the *Timmons* Action to the Northern District of Illinois. Thereafter, Lytx filed a Local Rule 40.4 motion for reassignment to this Court, which Plaintiff did not oppose. ECF No. 36. This Court granted Lytx's motion on October 5, 2022. ECF No. 38.

On October 17, 2022, the Parties filed a joint status report wherein counsel for Plaintiff Timmons and Plaintiff Cavanaugh agreed to file a single consolidated amended complaint in the *Cavanaugh* Action. ECF No. 40. Before Plaintiffs Timmons and Cavanaugh filed their consolidated amended complaint, GMT objected to consolidation and moved to sever Mr. Timmons' claims against GMT and to stay said claims. ECF No. 48. Plaintiff opposed GMT's motion and GMT filed a reply in support. ECF Nos. 51-52.

Plaintiffs filed their amended complaint against Lytx and GMT on November 10, 2022. ECF No. 49. While GMT's objection to consolidation and motion to sever were pending, Defendants were not required to file a response to the complaint. ECF No. 62 (Minute Entry).

On February 29, 2024, this Court overruled GMT's objection to consolidation and denied its motion to sever and stay. ECF No. 87. It thereafter set a schedule for briefing on Defendants' motion(s) to dismiss the Consolidated Amended Complaint. *Id.*

C.    <u>**Defendants' motion to dismiss.**</u>

On April 12, 2024, Defendants Lytx and GMT filed a motion to dismiss for failure to state a claim or, alternatively, to amend Plaintiffs' class definition to remove non-Illinois residents and

stay this action as duplicative of the *Lewis* Action. ECF Nos. 92-93. Defendants primarily argued that Plaintiffs' claims were preempted by various federal laws and regulations, that applying BIPA to non-Illinois citizens would be an impermissible extraterritorial application of BIPA, and that Plaintiffs failed to plead that Defendants collect biometric information. *See id*. ECF No. 93. In response, Plaintiffs argued that, like numerous other BIPA cases, their claims were not preempted, that BIPA applied to conduct within the State of Illinois, regardless of a class member's residency, and that they had adequately pled the Lytx DriveCam collects biometric information. *See id*., ECF No. 100. On July 15, 2024, Defendants filed their reply in support of their motion. ECF No. 108.

### D. **Mediation and settlement of the Lytx claims.**

In July 2024, the Parties in the *Lewis* and *Cavanaugh* Actions separately and independently agreed to mediate with *Lytx*. As part of that mediation, Lytx provided further informal discovery pursuant to Federal Rule of Evidence 408.

In September 2024, Plaintiffs and Lytx held a full-day mediation that resulted in the mediating parties accepting a mediator's proposal. *See Lewis* Action, ECF No. 113. The mediating parties agreed to file their settlement with Lytx in the *Lewis* Action in the Southern District of Illinois.

As part of the settlement with Lytx, Plaintiffs Timmons and Cavanaugh, along with Lytx, moved to partially stay Plaintiffs' claims against Lytx on October 23, 2024, which the Court granted on October 25, 2024. ECF Nos. 113, 115.

On November 22, 2024, Plaintiffs moved for preliminary approval of their $4.25 million non-reversionary common fund settlement with Lytx. *See Lewis* Action, ECF Nos. 122-25. On January 22, 2025, after the *Lewis* Court preliminarily approved the settlement with Lytx, Plaintiffs Timmons and Cavanaugh filed a dismissal of their claims against Lytx in this action. ECF No. 119-20.

3270394.1

### E.     The denial of GMT's motion to dismiss and the Settlement.

On March 30, 2025, this Court denied GMT's motion to dismiss and denied its motion to amend the class definition. ECF No. 125. It held that Plaintiff's allegations were sufficient to resist dismissal on preemption grounds, *id.* at 7, Plaintiff's allegations rebutted GMT's extraterritoriality defense, *id.* at 16, that Plaintiff "sufficiently alleges that Gemini obtains biometric identifiers and biometric information," *id.* at 17, that Plaintiff could not pursue injunctive relief, *id.* at 21, and refused to amend Plaintiff's class definition, *id* at 21-22.

While the Parties had initial discussions related to resolving the matter in 2022, negotiations restarted in earnest in late 2024. Decl*.* ¶ 20. At that juncture, Plaintiff and GMT had a fuller understanding of the strength of Plaintiff's claims against GMT, namely the threshold issue of whether Lytx's technology falls within the ambit of BIPA. *Id*. Thereafter, and in particular after the motion to dismiss order, Plaintiff's Counsel and GMT's Counsel continued arm's length negotiations regarding specific Settlement terms, including the allocation between Illinois and non-Illinois residents, the plan of notice, and, after agreeing to the terms of the Settlement, the amount of attorneys' fees and costs. *Id.* ¶ 22. Based upon the discovery conducted in these Actions, as well as Plaintiff's Counsel's independent investigation of the relevant facts and applicable law, they believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. The Parties worked together to finalize and memorialize a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto that are being contemporaneously submitted herewith. *Id.* ¶ 23.

## III.     THE SETTLEMENT TERMS

### A.     The Settlement Class

The Settlement Class is defined as "All Gemini Motor Transport, L.P. employees with an Illinois residence or Illinois fleet city assignment who operated a Gemini vehicle equipped with a

Lytx driver-facing event recorder device in the State of Illinois between December 29, 2016 and October 23, 2025." *See* Agmt. § 3.

### B. Monetary Settlement Payment

The Settlement requires GMT to pay an all-cash non-reversionary sum of $40,000 (the "Settlement Fund") for the benefit of the Settlement Class Members. *See* Agmt. § 5. Unless they submit a valid and timely request to opt out, each Settlement Class Member will automatically be entitled to a Settlement Payment in an amount reflecting the *pro rata* portion of the Settlement Fund, whereby each Illinois Class Member is entitled to 2.5 "shares" of the Settlement Fund and each Non-Illinois is entitled to 1 "share," less any Court-approved attorneys' fees and costs, service awards, and costs of settlement administration. *See id*. § 6.

### C. The Class Notice Plan

The Settlement provides a comprehensive Notice Plan to the Settlement Class, through the Parties' chosen Settlement Administrator, Simpluris. First, GMT will provide Simpluris with the names and mailing addresses of the 196 Settlement Class Members. *See id*. § 7(b)(i).

Simpluris will send, by U.S. mail, the Class Notice, *see id.* Exhibit 2, to all Settlement Class Members within 21 days of the Court's Preliminary Approval Order. *See id*. § 7(b)(ii).

The Class Notice includes, but is not limited to, the following information: (1) a plain and concise description of the nature of the Action and the proposed Settlement, (2) the right of Settlement Class Members to opt out of or to object to the Settlement, (3) the date, time and place of the final approval hearing, and (4) information regarding Class Counsel's fee application and the Class Representatives' service award. *See id*. § 7(b)(iii) & Ex. 2 (mail notice).

Simpluris shall mail checks to all Settlement Class Members that it was able to send notice to, provided they did not timely opt out of the Settlement. Settlement Class Members shall have ninety (90) days to cash the checks. *Id.* § 7(d). To the extent it is economically feasible, all funds

-6-

from checks that were not cashed within 90 days after issuance shall be paid on a *pro rata* basis to the Settlement Class Members who timely cashed their initial checks. *Id.*

### D. <u>Opportunity to Opt-Out and Object, and Appear at Hearing</u>

Settlement Class Members will be permitted to exclude themselves from the Settlement or object to the Settlement no later than sixty (60) days following the Notice Date. *See id.* §§ 9 & 10.

### E. <u>Scope of Release</u>

Settlement Class Members are releasing GMT (and related entities) from any and all claims which have been or could have been asserted against GMT by any member of the Settlement Class "which arise out of or relate to the capture, collection, storage, possession, transmission, conversion, purchase, obtaining, sale, lease, profit from, disclosure, re-disclosure, dissemination, transmittal, conversion and/or other use of data derived from the use of any Lytx Device, including without limitation any 'biometric identifiers' or 'biometric information' as those terms are defined in the Illinois Biometric Information Privacy Act, 740 ILCS 14/10, et seq., at any time before the Settlement Effective Date." *See id*. § 16.

### F. <u>Attorneys' Fees, Litigation Costs, and a Service Award</u>

Class Counsel will seek an award of attorneys' fees and reimbursement of reasonable costs and expenses in an amount not to exceed one-third of the Settlement Fund, or $13,333.33. *See id*. § 11. Class Counsel will also seek a Service Award for Mr. Timmons, in an amount not to exceed $1,500 for Mr. Timmons, in recognition of his efforts in this litigation. *See id.* § 12. Such amounts shall be paid exclusively from, and not in addition to, the Settlement Fund. *See id*.

Negotiations on these terms were only commenced after the Parties reached agreement on all other material terms in the Agreement. *See id*. GMT retains the right to challenge any fees, and costs should it wish to do so, and any un-awarded attorneys' fees, costs, or service award will be paid directly to Settlement Class Members. *See id*. § 11.

IV.    **LEGAL STANDARD**

"The Seventh Circuit has recognized the 'overriding public interest in favor of settlements' in the class action context[.]" *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD, 2024 WL 3373780, at *3 (S.D. Ill. July 11, 2024) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980)).

Pursuant to Rule 23(e), a class action settlement must be approved by a presiding court before it can become effective. Court approval proceeds in two stages: (1) preliminary approval of the proposed settlement and direction of notice to the class; and (2) a final approval hearing, at which the Court considers arguments concerning the fairness, adequacy, and reasonableness of the proposed settlement. *See Bradford Hammacher Grp., Inc., Emp. Stock Ownership Plan v. Reliance Tr. Co.*, No. 1:16-cv-04773, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020).

At the outset, the Court determines whether the proposed settlement is "within the range of possible approval with regard to the criteria set forth in Rule 23(e)(2)[.]" *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (citations omitted). Unless the Court's initial examination reveals "obvious deficiencies," the Court should preliminarily approve the settlement and order notice to class members. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 (6th ed. 2024).

Rule 23(e) provides that a court may approve a settlement upon finding "it is fair, reasonable, and adequate," after consideration of the following:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

After the Court makes a preliminary fairness determination under 23(e), it must then conditionally certify a class for purposes of the Settlement under Rule 23(a) and "at least one of the subsections of 23(b)." *Hollins v. Church Church Hittle + Antrim*, No. 2:20-cv-305-JD, 2023 WL 4397769, at *3-6 (N.D. Ind. July 7, 2023) (granting preliminary approving and holding that "certification is likely appropriate under Fed. R. Civ. P. 23(a) and (b)(3)").

## V.  ARGUMENT

### A.  The proposed Settlement satisfies the standards for Preliminary Approval.

#### 1.  Plaintiff and his Counsel zealously represented the Class.

Under the first Rule 23(e)(2) factor, courts consider whether the class representatives and class counsel will adequately represent the class. *See* FED. R. CIV. P. 23(e)(2). Courts consider: (1) whether class representatives are "part of the class and possess the same interest and suffer the same injury as the class members;" (2) if class representatives "have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept;" and (3) "the competency and conflicts of class counsel." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343-44 (N.D. Ill. 2010) (citations omitted).

All prongs have been satisfied here:

- Like the Class as a whole, Mr. Timmons was allegedly subject to the collection of his biometric data by Lytx's DriveCam technology while driving through Illinois as a GMT employee. Mr. Timmons shares the same injury and the same interests as the rest of the Class (*i.e.*, to vindicate their rights under BIPA) making him an adequate representative. *In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696, at *2 (S.D. Ind. Jan. 12, 2022) (class representatives

-9-

adequate where they sought to maximize recovery from data breach impacting the entire class).

- Mr. Timmons has shown commitment to this case by staying actively informed of the litigation and providing information to counsel. Decl. ¶¶ 35-36. Plaintiff is sufficiently aware of the importance and responsibility of his role as Class Representative and has overseen and participated in the litigation at all stages.

- Class Counsel litigated this case zealously and are more than adequate. The Settlement was reached after extensive investigation, three years of litigation across multiple actions, and thorough discovery of the issues in the Actions. In addition to pre-suit investigation, Class Counsel met and conferred with Lytx regarding the DriveCam technology and discussed it in the context of the *Lewis* Action mediation, which crystallized the relevant facts in the case, enabling them to effectively value the parties' respective positions and verify the fairness, adequacy, and reasonableness of the Settlement with GMT.

In sum, "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2).

### 2. The Settlement is the result of arm's-length negotiation by experienced counsel and is informed by targeted discovery.

The second Rule 23(e)(2) factor is whether the proposal was negotiated at arm's length. Arm's-length negotiations tend to be "highly adversarial" and "non-collusive." *See, e.g.*, *In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016). Such a negotiation often involves, as here, the exchange of discovery material and a robust exchange of proposals and counter-proposals between the parties. *In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016) (finding "arm's length" settlement negotiations where parties exchanged discovery material and several counter-proposals); *Bills v. TLC Homes Inc.*, 2020 WL 5982880, at *2 (E.D. Wis. Oct. 8, 2020) (same); *Parker v. Villa of Greenfield LLC*, 2022 WL 16659191, at *2 (E.D. Wis. Nov. 3, 2022) (same). In addition to the presence of "confirmatory discovery," courts also consider other "indicia of an arm's length adversarial process" including a "vigorous factual and legal defense." *See In re TikTok, Inc., Consumer Priv.*

-10-

*Litig.*, 617 F. Supp. 3d 904, 934 (N.D. Ill. 2022) (granting settlement approval where the history of the case showed "a vigorously negotiated settlement reached in good faith").

This factor weighs in favor of approval. First, Plaintiff engaged in targeted discovery consisting of a pre-suit investigation, informal discovery prior to mediation with Lytx in the *Lewis* Action, and exchanging additional discovery materials in preparation for the successful joint mediation. Decl. ¶¶ 8, 16. The threshold question of whether Lytx's technology fell within the ambit of BIPA was the key to Plaintiff's assessment of the risks involved in continuing to litigation.

Second, the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions. The Parties negotiated at arm's-length for several months, informed by the settlements reached in *Lewis* with another employer-defendant and the settlement reached with Lytx itself. This adversarial process resulted in a mutually agreeable settlement. In short, the Parties' process in reaching a Settlement satisfies Rule 23(e)(2). *See, e.g.*, *In re: Sears, Roebuck & Co.*, 2016 WL 772785, at *12.

### 3. The Settlement represents a strong result for the Class, particularly given the substantial risk and challenges the Class faces.

The third Rule 23(e)(2) factor requires a showing that the Settlement provides adequate relief, taking into account "the costs, risk, and delay of trial and appeal." *See* FED. R. CIV. P. 23(e)(2)(C). That is the case here, as the Settlement provides substantial relief comparable to other BIPA settlements. Taking into account the significant risks of continued litigation, challenges to recovery posed by recent changes in the law, and the relatively early posture of the case, settlement presents the best option for providing the Settlement Class with a fair recovery.

If Plaintiff sought greater relief through further litigation, "all that is certain is that [Plaintiff] would have spent a large amount of time, money and effort." *Seiden v. Nicholson*, 72

F.R.D. 201, 208 (N.D. Ill. 1976). The significant and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation.

In contrast, if the case were to continue, Plaintiff and the Settlement Class would face a number of difficult challenges. Most immediately, Plaintiff would have to prove that Lytx's technology falls within the BIPA statute. As expressed in the settlement with Lytx, in that action, Lytx produced evidence in the litigation against it to persuade Plaintiff that its technology provides Lytx with a strong defense that Lytx's technology does not collect, capture, possess, obtain, store, use, disseminate, disclose, or profit from biometric identifiers or information, and that proving Lytx technology does otherwise would present a significant challenge and a substantial burden upon Plaintiff should this matter proceed to summary judgment or trial. If Lytx's technology does not fall within the ambit of BIPA, then GMT would not be required to adhere to BIPA's requirements at all.

Further, changes in the law could also limit Plaintiff's recovery in a way that was not foreseeable when the case was filed: for example, Illinois recently amended BIPA to limit future recovery under each prong of BIPA to one violation per individual. *See* 740 ILCS § 14/20(b)-(c). Plaintiff may no longer be able to argue that violations accrue each time GMT collects or disseminates a Class Member's biometrics. In short, given the risks of continued litigation and the new limits imposed by the Illinois legislature on recovery under BIPA, settlement is by far the preferable option at this juncture.

    **4.**    **The effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing claims.**

Rule 23(e)(2)(C)(ii) requires the Court to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). The proposed method of distributing relief is fair,

reasonable, and straightforward. Settlement payments from the non-reversionary $40,000 Settlement Fund will be allocated with 2.5 "shares" going to Illinois Class Members and one share going to Non-Illinois Class Members. *See* Agmt. § 6. Assuming that no Settlement Class Members opt out and after deducting the requested fees, expenses, administration costs, and service awards, this recovery equates to an allocation of approximately $111.05 each for Illinois Class Members and $44.42 each for Non-Illinois Class Members based on an estimated Class size of 172 Illinois residents and 24 non-Illinois residents.

Both figures are in line with other BIPA settlements. *See In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (payment of "$34.60 per claimant is not insignificant" in light of risks of continued litigation); *Rosenbach v. Six Flags Entm't Corp.*, No. 16-CH-13 (Ill. Cir. Ct.) (allowing for either $60 or $200 monetary relief per class member, depending on time of scan); *In re TikTok*, 617 F. Supp. 3d at 934-37 (payments of $27.19 and $163.13 to non-Illinois and Illinois class members, respectively, provided "substantial" relief to the class as compared to other data privacy class settlements).

The Settlement differentiates between Illinois and non-Illinois residents because, given the extraterritoriality defense raised by GMT, there is a greater risk associated with the claims of non-Illinois residents. Thus, the planned distribution is equitable. *See* FED. R. CIV. P. 23(e)(2)(D).

**5.** **Class Counsel's request for attorneys' fees is in line with Seventh Circuit standards.**

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). Here, the Agreement provides that Class Counsel may seek attorneys' fees and expenses in an amount not to exceed one-third of the Settlement Fund, or $13,333.33. Agmt. § 11. Class Counsel's fee request of one-third is "common throughout district courts in the Seventh Circuit." *Chambers v. Together*

-13-

*Credit Union*, 2021 WL 1948452, at *2 (S.D. Ill. May 14, 2021) (collecting cases and holding that one-third of the common fund is the "normal rate of compensation").

Class Counsel will file their motion for attorneys' fees and expenses twenty-one (21) days prior to the Opt-Out and Objection deadline. Agmt. § 11(g). Class Members will thus have an opportunity to comment or object under Rule 23(h).

### 6. There are no undisclosed side agreements.

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Here, there are none.

### 7. The Settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) instructs the Court to consider whether the settlement agreement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). Here, as detailed above, the Settlement accounts for the unique affirmative defenses related to non-Illinois residents. *See supra* Agmt. § 6.

Under this prong of Rule 23(e), courts also consider service awards. *See, e.g.*, *Zhu v. Wanrong Trading Corp.*, 2024 WL 4351357, at *9 (E.D.N.Y. Sept. 30, 2024) (approving service awards of $10,000 and $20,000 under Rule 23(e)(2)(D)). Here, Mr. Timmons will be entitled to seek a service award of up to $1,500, in acknowledgement of his time and effort expended on the case, as well as the inherent risks of representing a class. Agmt. § 12. Service awards of this amount are typical within the Seventh Circuit, particularly in cases arising from a class representative's employment. *See, e.g.*, *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 WL 1730995, at *2 (N.D. Ill. May 1, 2017) (approving service award of $10,000 to named plaintiff and stating

-14-

service awards are appropriate in litigation where "plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers").[2]

### B. Conditional certification of the Settlement Class is appropriate.

Plaintiff respectfully submits that the Court can likely certify the class for settlement purposes. *See* FED. R. CIV. P. 23(e)(1)(B)(ii). Class certification is governed by Rule 23(a) and Rule 23(b), at least one subsection of which must be satisfied. The general standards for class certification for purposes of litigation apply to class certification for settlement, except that the court need not consider potential trial management problems. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiff satisfies Rule 23(a)'s four requirements.

#### 1. Plaintiff satisfies the four Federal Rule of Civil Procedure 23(a) prongs.

##### a. Numerosity (FED. R. CIV. P. 23(a)(1))

The first of Rule 23(a)'s prerequisites is that any proposed "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (citation omitted). Here, GMT estimates that there are 196 individuals, 172 Illinois residents and 24 Non-Illinois residents in the Settlement Class. Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

---

[2] *See also Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 WL 969616, at *7 (N.D. Ill. Feb. 27, 2020) (approving service award of $10,000 for named plaintiff who "at great risk to herself" represented "995 minimum wage pizza delivery drivers"); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-cv-10447, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016) (approving services awards of $12,500 to each named plaintiff in a FLSA settlement against their employer).

### b.     Commonality (FED. R. CIV. P. 23(a)(2))

Rule 23(a)(2) requires that there is at least one question "of law or fact common to the class," such that the answer to that question is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350 (2011). Plaintiff's and each Settlement Class Member's claims are based upon the common application of one Illinois statute, BIPA. Moreover, questions of law or fact common to the Settlement Class include, among others, whether: (1) Lytx and GMT captured, collected, or otherwise obtained Plaintiff's and Settlement Class Members' biometrics; (2) GMT properly informed Plaintiff and the Settlement Class that it captured, collected, used, and stored their biometrics; (3) GMT obtained a written release to capture, collect, use, and store Plaintiff's and Settlement Class members' biometrics; and (4) GMT's violations of BIPA were committed intentionally, recklessly, or negligently. Accordingly, the answers to these common questions of law and fact satisfy Rule 23(a)(2).

### c.     Typicality (FED. R. CIV. P. 23(a)(3))

The typicality requirement asks whether "the claims . . . of the representative parties [are] typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). Typicality is satisfied if the class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *Kramer v. Am. Bank & Tr. Co.*, 2017 WL 1196965, at *6 (N.D. Ill. Mar. 31, 2017) (citation omitted).

Here, Plaintiff has claims not only similar, but virtually identical, to members of the Settlement Class. Plaintiff and Settlement Class members were all subject to the same Lytx DriveCam technology while driving GMT vehicles and employed by GMT, which Plaintiff alleged captured and retained his biometrics. Plaintiff also alleges that GMT did not obtain the requisite consent from him or any Settlement Class Member. Moreover, Plaintiff's claims are typical of the

Settlement Class Members because they are based on the same legal theories and share a common injury due to GMT's alleged violations of the BIPA. As such, Rule 23(a)(3) is satisfied.

### d. Adequacy of Representation (FED. R. CIV. P. 23(a)(4))

Class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Here, Plaintiff has no antagonistic interests in relation to other Settlement Class Members since each had their biometric information and identifiers allegedly captured without consent by GMT. Thus, Plaintiff is sufficiently interested in the outcome of this case to ensure his vigorous advocacy. Plaintiff is not subject to unique defenses and he and his counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Plaintiff's interests align with those of the other Settlement Class Members.

In addition, Lieff Cabraser Heimann & Bernstein and Milberg Coleman Bryson Phillips Grossman, PLLC are active practitioners with substantial experience litigating actions under BIPA and complex class actions nationwide. *See* ECF Nos. 44-2 & 44-3 (Lieff Cabraser and Milberg firm resumes). Thus, Plaintiff and his counsel fairly and adequately represent the Settlement Class.

### 2. The requirements of Rule 23(b)(3) are satisfied.

Certification is appropriate under Rule 23(b) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *See* FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 594. These requirements are satisfied in this case.

The Supreme Court has defined the predominance inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (citation omitted).

-17-

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all Settlement Class Members, such as whether Lytx's technology used drivers' biometrics and whether GMT informed Plaintiff and Settlement Class members of such and obtained their consent. Accordingly, this prong of Rule 23(b)(3) is satisfied.

Next, the superiority inquiry considers whether a class action is superior to many individual actions. FED. R. CIV. P. 23(b)(3). The second prong of Rule 23(b) is satisfied by the proposed Settlement. First, each Class member's individual damages, while significant to them, are not substantial enough to justify the costs of an entire lawsuit. *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits . . . ."). This suffices to establish superiority in class actions. *See, e.g.*, *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (noting that class resolution is superior when "aggregating . . . relatively paltry potential recoveries").[3]

## VI.   **THE PROPOSED NOTICE PLAN COMPLIES WITH RULE 23 AND DUE PROCESS**

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1)(B). The notice should inform members of the Settlement Class of the terms of the proposed Settlement and of the opportunity to present their own views on the Settlement. *See Manual for Complex Litigation* § 21.633 (4th ed. 2024).

Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class, the class claims and issues

---

[3] As explained in *Amchem*, manageability is not a concern as "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the Settlement.

involved in the Actions, and the method of distribution of settlement proceeds; the rights of the Settlement Class Members to enter an appearance through an attorney if so desired; the rights of Settlement Class Members to participate in the Settlement, to opt out of or to object to the Settlement, and specifics on the dates and how to exercise these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Approval Hearing; the time and location of the Final Approval Hearing; and the binding effect of a class judgment on members. Agmt. Ex. 2. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and service award for the Class Representative.

Moreover, the proposed Notice Plan proposes to notify Settlement Class Members of the Settlement by mailing the notice directly to their last known address, which GMT will provide to Simpluris. As the current employer of most Settlement Class Members, GMT will be able to easily provide correct information for all Settlement Class Members.

Settlement Class Members will have 60 days from the Settlement Notice Date to object or opt-out of the Settlement. Agmt. §§ 9 & 10. Accordingly, the form and manner of Notice proposed satisfies Rule 23's requirements and due process, and Plaintiff respectfully requests that the Court approve the proposed Notice Plan.

## VII. SCHEDULING AND FINAL APPROVAL HEARING

The next steps in the settlement approval process are to notify Settlement Class Members of the Settlement and permit them to file claims, opt-out, or object, and then hold a Final Approval Hearing. To those ends, the Parties propose the following schedule:

| Event | Date |
|-------|------|

| Settlement Notice Date | 21 days after issuance of Preliminary Approval Order |
|---|---|
| Opt-Out Deadline/Objection Deadline | 60 days after Settlement Notice Date |
| Last day for Plaintiff and Class Counsel to file motion for attorneys' fees, expenses, and service awards | 30 days before the Opt-Out/Objection Deadline |
| Last day for Parties to file any motions for final approval, including any responses to objections | 10 days before Final Approval Hearing |
| Final Approval Hearing | No earlier than 100 days after the Preliminary Approval Order, or as soon thereafter as practicable |

## VIII.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) holding that it will likely certify, for settlement purposes, the Settlement Class; (3) appointing Plaintiff as Class Representative of the Settlement Class; (4) appointing Lieff Cabraser Heimann & Bernstein, LLP and Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; (5) approving the Parties' proposed Notice Plan, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice Plan and Fed. R. Civ. P. 23(c) and (e)(1); (6) appointing Simpluris as Settlement Administrator and directing it to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement; (7) setting deadlines for Settlement Class Members to request exclusion from the Settlement and object to the Settlement; (8) maintaining the stay of all non-Settlement-related proceedings pending final approval of the Settlement; and (9) scheduling a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated:  October 24, 2025                    Respectfully submitted,

                                            /s/ Sean A. Petterson
                                            Sean A. Petterson

-20-

Jason L. Lichtman
jlichtman@lchb.com
Sean A. Petterson
spetterson@lchb.com
Muriel J. Kenfield-Kelleher
mkenfieldkelleher@lchb.com
LIEFF CABRASER
HEIMANN & BERNSTEIN LLP
250 Hudson St., 8th Floor
New York, New York 10013
(212) 355-9500

Gary M. Klinger
gklinger@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street,
Suite 2100
Chicago, IL 60606
(866) 252-0878

*Attorneys for Plaintiff and the Class*

-21-

<u>**CERTIFICATE OF SERVICE**</u>

I, Sean A. Petterson, certify that on October 24, 2025, I caused a true and correct copy of this **Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval** to be filed with the clerk of court using the Court's CM/ECF system, which will serve electronic notice upon all parties of record.

*s/ Sean A. Petterson*
Sean A. Petterson
