**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL TIMMONS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEMINI MOTOR TRANSPORT, L.P., an Oklahoma company,<br><br>Defendant. | Case No. 1:21-cv-05427<br><br>Honorable Edmond E. Chang |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARD**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........ 1

II. OVERVIEW OF THE LITIGATION ........ 2

A. Summary of Plaintiff's Allegations. ........ 2

B. The Litigation and Work Performed to Benefit the Class. ........ 2

1. The *Timmons* Action. ........ 2

2. Transfer to the Northern District of Illinois and consolidation with the *Cavanaugh* Action. ........ 3

3. Defendants' motion to dismiss. ........ 4

4. Mediation and settlement of the Lytx claims. ........ 4

5. The denial of GMT's motion to dismiss and settlement. ........ 4

III. SUMMARY OF THE SETTLEMENT ........ 5

A. The Settlement Class ........ 5

B. Monetary Settlement Payment ........ 5

C. Release ........ 5

D. Attorneys' Fees, Litigation Expenses, and Service Award ........ 6

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT AND NOTICE ........ 6

V. IT IS APPROPRIATE TO AWARD CLASS COUNSEL A PERCENTAGE OF THE COMMON FUND AS ATTORNEYS' FEES. ........ 7

A. The Seventh Circuit favors the percentage-of-the-fund method in common fund cases. ........ 7

B. Class Counsel's requested fee of 32.0% is an appropriate market-based fee. ........ 9

1. The requested fee is consistent with fee awards in similar cases, and Class Counsel are unaware of any auctions in similar litigation. ........ 10

2. The risks of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case support Class Counsel's fee request. ........ 11

C. A lodestar crosscheck is not warranted. ........ 12

VI. THE LITIGATION EXPENSES AND NOTICE ADMINISTRATION COSTS WERE REASONABLY INCURRED AND SHOULD BE APPROVED. ........ 13

**TABLE OF CONTENTS**
**(continued)**

**Page**

VII. THE REQUESTED SERVICE AWARD IS PROPER AND SHOULD BE APPROVED. .......... 14
VIII. CONCLUSION .......... 15
CERTIFICATE OF SERVICE .......... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bedford v. Lifespace Cmtys., Inc.*
(N.D. Ill.), ECF Nos. 27, 32 .....9

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .....7, 8

*In re Broiler Chicken Antitrust Litig.*,
2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .....13

*Burlinski v. Top Golf USA Inc.*,
No. 19-cv-06700 (N.D. Ill.), ECF Nos. 102, 103 .....9, 14

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
897 F.3d 825 (7th Cir. 2018) .....1, 11

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .....8, 11

*Cavanaugh v. Lytx, Inc.*,
No. 1:21-cv-05427 (N.D. Ill.) .....3, 4

*Clements v. WP Operations, LLC*,
2023 WL 315511 (W.D. Wis. Jan. 19, 2023) .....14

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .....9, 10

*Cooper v. IBM Pers. Pension Plan*,
2005 WL 1981501 (S.D. Ill. Aug. 16, 2005), *rev'd and remanded on other grounds*, 457 F.3d 636 (7th Cir. 2006) .....9

*Crumpton v. Octapharma Plasma, Inc.*,
No. 19-cv-08402 (N.D. Ill.), ECF Nos. 84, 91 .....9, 10, 11, 14

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .....10

*Davis v. Heartland Emp. Servs., LLC*,
No. 19-cv-00680 (N.D. Ill.), ECF Nos. 125, 130 .....9, 15

*Domann v. Summit Credit Union*,
2020 WL 1847868 (W.D. Wis. Apr. 13, 2020) .....13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....................8

*Heekin v. Anthem, Inc.*,
2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ....................11

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)....................8, 9

*T.K. ex rel. LeShore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022)....................12

*Lewis v. Maverick Transportation LLC and Lytx, Inc.*,
No. 3:22-cv-00046 (S.D. Ill.)....................3, 4, 9

*McCue v. MB Fin., Inc.*,
2015 WL 4522564 (N.D. Ill. July 23, 2015)....................8

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)....................13

*Montgomery v. Peri Formwork Sys., Inc.*,
No. 20-cv-07771 (N.D. Ill.), ECF Nos. 30, 34 ....................9, 14

*Nellis v. Vivid Seats LLC*,
2021 WL 12319464 (N.D. Ill. Nov. 1, 2021) ....................8

*In re Ready-Mixed Concrete*,
2010 WL 3282591 ....................13

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................14

*Spano v. Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................14

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ....................1, 11

*In re Sw. Airlines Voucher Litig.*,
2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) *amended on other grounds*, 2014 WL 2809016 (N.D. Ill. June 20, 2014)....................14

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ....................10, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ....................9, 12, 13, 14

*Timmons v. Lytx Inc. et al.*,
No. 3:22-cv-03025 (C.D. Ill.), ECF No. 1 ....................2, 3

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ....................12

*Williams v. Rohm & Haas Pension Plan*,
2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) ....................15

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ....................10, 12

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA") .................... *passim*

**Court Rules**

Federal Rule of Civil Procedure 23(h) ....................1, 7, 13

## I. **INTRODUCTION**[1]

Plaintiff Nathaniel Timmons ("Plaintiff") hereby moves the Court for an award of attorneys' fees, litigation costs, and a service award.[2] The Settlement, preliminarily approved by this Court on November 5, 2025 (ECF No. 159), provides for a non-reversionary common fund of $40,000 for the benefit of Settlement Class Members, resolving all claims against Defendant GMT.

As compensation for more than four years vigorously litigating this class action under the Illinois Biometric Information Privacy Act ("BIPA"), including surviving a motion to dismiss and negotiating resolution of three related cases, Plaintiff and Class Counsel respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve their request for attorneys' fees of $11,116.63, litigation expenses of $216.60, and a service award of $1,500 to Plaintiff for his service as a Class Representative.

The requested attorneys' fees, litigation expenses, and service award are fair and reasonable under Seventh Circuit, and comparable with numerous awards in similar cases. The requested fee is reasonable and awards Class Counsel the "market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832-33 (7th Cir. 2018) (quoting *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)). Class Counsel's requests are supported by the risks undertaken in prosecuting this Action, the time and effort expended in investigating, prosecuting and settling this Action, and the excellent benefit conferred to the Settlement Class. Plaintiff and Class Counsel respectfully request that the Court approve their requested attorneys' fees and litigation expenses, and the service award.

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the Class Action Settlement Agreement (ECF Nos. 153 and 158) or the Amended Complaint (ECF No. 49).

[2] Plaintiff conferred with Defendant Gemini Motor Transport, L.P. ("GMT") prior to filing this motion. GMT indicated that it would not oppose the relief requested by Plaintiff.

## II. OVERVIEW OF THE LITIGATION[3]

### A. Summary of Plaintiff's Allegations.

This action alleges that GMT, through its use of inward-facing dashboard cameras sold by technology provider Lytx, Inc. ("Lytx"), collects the biometric identifiers and biometric information of its drivers without complying with BIPA's notice and consent requirements. GMT is an interstate motor carrier that outfitted its commercial vehicles with a Lytx product called the DriveCam, which employs technology called machine vision and artificial intelligence ("MV+AI"). Plaintiff alleges that GMT used Lytx's DriveCam technology in commercial vehicles that operated in Illinois.

### B. The Litigation and Work Performed to Benefit the Class.

#### 1. The *Timmons* Action.

On December 29, 2021, Plaintiff Nathaniel Timmons filed a class action lawsuit against his employer, GMT, and former defendant Lytx in the Circuit Court of Morgan County, Illinois, alleging that they violated BIPA by collecting his biometric information and identifiers without obtaining his written consent, which Defendants thereafter removed to the United States District Court for the Central District of Illinois. *See Timmons v. Lytx Inc. et al.*, No. 3:22-cv-03025 (C.D. Ill.) (the "*Timmons* Action"), ECF No. 1.

In early 2022, Lytx provided informal discovery to Plaintiff Timmons explaining its technology. *See* Declaration of Sean A. Petterson in support of Plaintiff's Unopposed Motion for Attorney's Fees, Litigation Expenses, and Service Award ("Petterson Fee Decl.") ¶ 8.

On May 3, 2022, Lytx moved to dismiss the *Timmons* Action. *See Timmons* Action, ECF Nos. 13-14. That same day, GMT filed a joinder in Lytx's motion to dismiss and in the alternative

---

[3] A more detailed background of the litigation and settlement terms was provided in Plaintiff's motion for preliminary approval. *See* ECF No. 150.

a motion to stay Plaintiff's claims against GMT pending the outcome of *Cavanaugh v. Lytx, Inc.*, No. 1:21-cv-05427 (N.D. Ill.) (the "*Cavanaugh* Action") and *Lewis v. Maverick Transportation LLC and Lytx, Inc.*, No. 3:22-cv-00046 (S.D. Ill.) (the "*Lewis* Action"). *See Timmons* Action, ECF No. 15. On May 31, 2022, Plaintiff opposed both motions. *See Timmons* Action, ECF No. 19.

#### 2. Transfer to the Northern District of Illinois and consolidation with the *Cavanaugh* Action.

While the initial motion to dismiss was pending, on June 28, 2022, Lytx moved to transfer the *Timmons* Action to the Northern District of Illinois so that it could seek to consolidate it with the *Cavanaugh* Action or, alternatively, to stay the case pending the outcome of the *Cavanaugh* Action. *Timmons* Action, ECF No. 24. On August 2, 2022, Plaintiff objected to the transfer because Lytx did not seek to also transfer the claims against GMT. *See Timmons* Action, ECF No. 27. That same day, GMT responded to Lytx's motion, opposing the consolidation of Plaintiff's claims against with the *Cavanaugh* Action. *Timmons* Action, ECF No. 28.

On September 16, 2022, Judge Myerscough transferred the *Timmons* Action to the Northern District of Illinois. Thereafter, Lytx filed a Local Rule 40.4 motion for reassignment to this Court, which Plaintiff did not oppose, and which this Court granted. ECF Nos. 36 & 38.

In an October 17, 2022 joint status report, counsel for Plaintiff Timmons and Plaintiff Cavanaugh agreed to file a single consolidated amended complaint in the *Cavanaugh* Action. ECF No. 40. Before Plaintiffs Timmons and Cavanaugh filed their complaint, GMT objected to consolidation and moved to sever Mr. Timmons' claims against GMT and to stay said claims. ECF No. 48. Plaintiff opposed GMT's motion and GMT filed a reply in support. ECF Nos. 51-52.

Plaintiffs filed their amended complaint against Lytx and GMT on November 10, 2022. ECF No. 49. While GMT's objection to consolidation and motion to sever were pending, Defendants were not required to file a response to the complaint. ECF No. 62 (Minute Entry).

On February 29, 2024, this Court overruled GMT's objection to consolidation and denied its motion to sever and stay. ECF No. 87.

### 3. **Defendants' motion to dismiss.**

On April 12, 2024, Defendants Lytx and GMT filed a motion to dismiss for failure to state a claim or, alternatively, to amend Plaintiffs' class definition to remove non-Illinois residents and stay this action as duplicative of the *Lewis* Action. ECF Nos. 92-93.

### 4. **Mediation and settlement of the Lytx claims.**

In July 2024, the Parties in the *Lewis* and *Cavanaugh* Actions separately and independently agreed to mediate with Lytx. As part of that mediation, Lytx provided further informal discovery pursuant to Federal Rule of Evidence 408. Petterson Fee Decl. ¶ 16. In September 2024, Plaintiffs and Lytx mediated and accepted a mediator's proposal for a $4.25 million non-reversionary common fund settlement with Lytx, wherein they agreed to file their settlement in the *Lewis* Action in the Southern District of Illinois. *See Lewis* Action, ECF No. 113. On January 22, 2025, after the *Lewis* Court preliminarily approved the settlement with Lytx, Plaintiffs Timmons and Cavanaugh dismissed their claims against Lytx in this action. ECF Nos. 119-20.

### 5. **The denial of GMT's motion to dismiss and settlement.**

On March 30, 2025, this Court denied GMT's motion to dismiss Plaintiff Timmons' remaining claims and denied its motion to amend the class definition. ECF No. 125.

After the Parties had initial settlement discussions in 2022, negotiations restarted in earnest in late 2024. Petterson Fee Decl. ¶ 19. At that juncture, the Parties had a fuller understanding of the strength of Plaintiff's claims, namely the threshold issue of whether Lytx's technology falls within the ambit of BIPA. *Id.* Thereafter, and in particular after the motion to dismiss order, Plaintiff's Counsel and GMT's Counsel continued arm's length negotiations regarding specific Settlement terms, including the allocation between Illinois and non-Illinois residents, the plan of

notice, and, after agreeing to the terms of the Settlement, the amount of attorneys' fees and costs. *Id.* ¶ 21. Thereafter, Plaintiff moved for preliminary approval of the Settlement on October 24, 2025, which was granted by this Court on November 5, 2025. *See* ECF Nos. 148, 150-153.

## III. SUMMARY OF THE SETTLEMENT

### A. The Settlement Class

The Settlement Class is defined as "[a]ll Gemini Motor Transport, L.P. employees with an Illinois residence or Illinois fleet city assignment who operated a Gemini vehicle equipped with a Lytx driver-facing event recorder device in the State of Illinois between December 29, 2016 and October 23, 2025." ECF No. 153 ("Agmt.") ¶ 3. The Settlement Class consists of 194 individuals, comprised of 171 Illinois residents and 23 non-Illinois residents. Petterson Fee Decl. ¶ 27.

### B. Monetary Settlement Payment

The Settlement requires GMT to establish a non-reversionary, cash settlement fund of $40,000 (the "Settlement Fund") for the benefit of the Settlement Class Members. Agmt. ¶ 5. Unless they submit a valid and timely request for exclusion by January 26, 2026, each Settlement Class Member will be entitled to a *pro rata* cash payment from the Net Settlement Fund. The Net Settlement Fund is divided into "shares" estimated to be worth $49.20 each after deduction of notice costs, requested attorneys' fees, expenses, and the service award. Petterson Fee Decl. ¶ 28. Illinois residents will receive 2.5 shares of the Settlement Fund (an estimated total of $123.01) and non-Illinois residents will receive 1 share ($49.20). *Id.* In no event will any of the Settlement Fund revert to GMT.

### C. Release

In exchange for the consideration from GMT and in accord with the Settlement, the Released Claims against the Released Parties will be dismissed with prejudice upon final approval of the Settlement. Agmt. ¶ 16.

### D. Attorneys' Fees, Litigation Expenses, and Service Award.

The Settlement Agreement permits Class Counsel to seek an award of attorneys' fees and expenses in an amount not to exceed one-third (1/3) of the Settlement Fund after settlement administration costs. *Id.* ¶ 11. Additionally, Plaintiff may seek a Service Award not to exceed $1,500. *Id.* ¶ 12. Accordingly, Class Counsel is seeking attorneys' fees of $11,116.63 (32.0% of the Settlement Fund after Settlement administration costs and litigation expenses), litigation expenses of $216.60, and a service award of $1,500 for Plaintiff Timmons.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT AND NOTICE

On October 24, 2025, Plaintiff moved for preliminary approval of the Settlement. ECF Nos. 148, 150-53. Following the October 30, 2025 preliminary approval hearing, the Court ordered the Parties to supplement the Settlement Agreement with the Parties' "agreement on how to handle uncashed checks for a second round of mailing or a cy pres (if the costs of a second round are too high)." ECF No. 157. The Parties' supplemental agreement stated that "a second round of checks should be distributed to Class Members who cashed their initial checks provided that the value of one 'share' is equal to or greater than $5.00." ECF No. 158.

On November 5, 2025, this Court granted preliminary approval of the Settlement finding:

- "[C]lass certification is appropriate for settlement purposes because (a) the Settlement Class is so numerous that joinder of all members is impractical, (b) there are common questions of law and fact relating to the settlement that predominate over any questions affecting only individual class members, (c) Plaintiff's claims are typical of the Settlement Class, (d) Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class, and (e) a class action is superior method for the fair and efficient resolution of this controversy." ECF No. 159 ¶ 2.

- "[T]he Agreement was entered into between Plaintiff and Defendant Gemini Motor Transport, L.P. after serious, informed, and arm's-length negotiations by experienced counsel. There were no obvious deficiencies in the Settlement Agreement, and the Settlement Agreement does not improperly grant preferential treatment to Plaintiff or segments of the class. It falls within the range of possible approval." *Id.* ¶ 5.

- The notice plan "satisfies the requirements of due process and Federal Rule of Civil Procedure 23, and is the best notice practicable under the circumstances. The Court further finds that the proposed notice is adequate and appropriate to inform members of the Settlement Class of the terms of the proposed Settlement. The plan is approved and adopted." *Id.* ¶ 6.

The Court appointed Plaintiff Timmons as Class Representative and Lieff Cabraser Heimann & Bernstein LLP and Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel. *Id.* ¶ 3.

On the Notice Date of November 26, 2025, the Settlement Administrator mailed the Class Notice to the Settlement Class List. *See* Petterson Fee Decl. ¶ 34. While the opt-out deadline is not until January 26, 2026, to date, no Class Member has opted out. *Id.* ¶ 36.

## V. IT IS APPROPRIATE TO AWARD CLASS COUNSEL A PERCENTAGE OF THE COMMON FUND AS ATTORNEYS' FEES.

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Here, Class Counsel and Plaintiff request an award of attorneys' fees of $11,116.63. This equals 32.0% of the Settlement Fund ($40,000) less notice expenses ($5,000) and litigation expenses ($216.60).[4] This requested fee is consistent with both Seventh Circuit precedent and fee awards routinely approved in the district and the Seventh Circuit for similar class settlements, and should be approved as such.

### A. The Seventh Circuit favors the percentage-of-the-fund method in common fund cases.

The percentage-of-the-fund approach equitably apportions the costs of litigation, including

[4] Specifically, Class Counsel seek $11,116.63/$34,783.40 (the net amount of the Settlement Fund).

attorneys' fees, among the class members who benefit from the common fund. *Boeing*, 444 U.S. at 478; *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015) ("This is a common fund case, meaning that because the defendant is paying a specific sum in exchange for release of liability to all plaintiffs, equitable principles permit the Court to determine[ ] the amount of attorney's fees that plaintiffs' counsel may recover from the fund based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." (citation omitted)).

The Seventh Circuit and federal district courts in Illinois have strongly and historically endorsed the percentage-of-the-fund method as the best means for calculating attorneys' fees in common fund cases. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (collecting cases) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiffs' side on a contingent-fee basis."); *Nellis v. Vivid Seats LLC*, 2021 WL 12319464, at *3 (N.D. Ill. Nov. 1, 2021) ("[T]his Court has recognized that . . . the favored method for calculating fees in common fund cases in this district [] sets the fee award as a percentage of the recovered settlement fund, plus expenses and interest." (citation omitted)).[5]

In *In re Continental Illinois Securities Litigation*, the Seventh Circuit stated "[t]he object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been

---

[5] *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate"); *McCue v. MB Fin., Inc.*, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) ("Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee.").

feasible." 962 F.2d 566, 572 (7th Cir. 1992) ("[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."). In class action litigation, the normal fee arrangement is to compensate attorneys based on a percentage of the plaintiffs' ultimate recovery. *See Kolinek*, 311 F.R.D. at 501. Because the percentage-of-the-fund approach best mirrors the contingency fee agreement, it is the preferred approach in the Seventh Circuit in common fund cases. *See Cooper v. IBM Pers. Pension Plan*, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005), *rev'd and remanded on other grounds*, 457 F.3d 636 (7th Cir. 2006) ("[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class, particularly where that percentage of the benefit approach replicates the market." (citation omitted and modified)).

Moreover, a percentage-of-the-fund approach is the method that has been employed by district courts in Illinois to award attorneys' fees in BIPA settlements. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 940 (N.D. Ill. 2022) (Zee, J.) (awarding one-third of net common fund).[6] It was likewise the method employed by the Southern District of Illinois in approving Class Counsel's requested fees in settling with both defendants in the related *Lewis* Action. *Lewis* Action, ECF No. 56 at 8-12, No. 63 at 4, No. 129 at 8-15, No. 138 at 8.

Thus, the percentage-of-the-fund approach is appropriate, particularly here, where the amount requested is less than the 33.33% standard.

**B. <u>Class Counsel's requested fee of 32.0% is an appropriate market-based fee.</u>**

The Seventh Circuit awards fees in a common fund settlement based on the "market rate,"

---

[6] *See also Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402 (N.D. Ill.), ECF Nos. 84, 91 (Kendall, J.) (awarding 33.33%); *Montgomery v. Peri Formwork Sys., Inc.*, No. 20-cv-07771 (N.D. Ill.), ECF Nos. 30, 34 (Pallmeyer, J.) (same); *Davis v. Heartland Emp. Servs., LLC*, No. 19-cv-00680 (N.D. Ill.), ECF Nos. 125, 130 (Valderrama, J.) (same); *Burlinski v. Top Golf USA Inc.*, No. 19-cv-06700 (N.D. Ill.), ECF Nos. 102, 103 (Chang, J.) (same); *Bedford v. Lifespace Cmtys., Inc.* (N.D. Ill.), ECF Nos. 27, 32 (Shah, J.) (same).

which must be determined by "approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001) (reversing district court's fee award in part where it imposed a lower fee percentage because the settlement fund was more than $100 million, holding that "[m]arkets would not tolerate that effect"). In other words, the Court must figure out what the Class Members would have agreed to pay Class Counsel in a negotiation at the beginning of this case, to create a fee structure that "emulates the incentives a private client would put in place." *Id.* at 719. To determine the applicable market rate, courts may consider: (1) actual privately negotiated fee contracts for similar litigation, (2) data from class-counsel auctions, and (3) information from other cases. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635–36 (7th Cir. 2011). "[T]he object is to simulate the market where a direct market determination is infeasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572.

Here, Class Counsel moves the Court to award fees and litigation expenses totaling 32.0% of the Settlement Fund. As explained below, the requested fee is fair and reasonable under the Seventh Circuit's market approach.

**1. The requested fee is consistent with fee awards in similar cases, and Class Counsel are unaware of any auctions in similar litigation.**

Class Counsel's requested fee award of 32.0% is below the going market rate in the Seventh Circuit and in Illinois. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) ("[U]sual range for contingent fees is between 33 and 50 percent." (citation omitted)).

As noted above, Class Counsel's fee request is also consistent with fee awards made in BIPA class actions in this Court. In awarding attorneys' fees of 33.33% in *Crumpton*, Chief Judge Kendall opined that such an award "is in line with fee awards provided in similar BIPA cases in this District and is reasonable in light of both the substantial risk that Class Counsel took on in

accepting the case and the excellent relief Class Counsel ultimately obtained for the Settlement Class." *See Crumpton*, No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022), ECF No. 92 at 6 (awarding class counsel 33.33% of $9,987,380 settlement). The fee award requested here is similarly justified because of the excellent results obtained by Class Counsel.

Class Counsel are unaware of any class-counsel auctions in similar litigation. Most auction data come from the securities context, and courts generally agree that data from those auctions has little bearing outside of the securities context. *See, e.g.*, *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *4 n.2 (S.D. Ind. Nov. 20, 2012) (noting in insurer demutualization case that "auctions in securities actions have little bearing on this case"); *see also In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 796 (acknowledging that "data from pre-suit negotiations and auctions tend to be sparse" and declining to rely on any such data).

Accordingly, the requested fee is fair and reasonable.

**2. The risks of nonpayment, the quality of the attorneys' performance, the amount of work necessary to resolve the litigation, and the stakes of the case support Class Counsel's fee request.**

As the Seventh Circuit held, "[f]actors that bear on the market price for legal fees include the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case." *Camp Drug Store*, 897 F.3d at 833 (citing *Sutton*, 504 F.3d at 693). Each factor supports granting Class Counsel's requested fee here.

*Risk of Nonpayment*. As detailed in Plaintiff's Motion for Preliminary Approval, the risks of nonpayment were substantial. ECF No. 150. It would be a significant challenge and substantial burden to show that the data allegedly collected constitutes "biometric identifiers" or "biometric information" within the meaning of BIPA. Given the foregoing, Plaintiff recognizes that the questions of what constitutes biometric information under BIPA and what type of consent is required are novel and evolving issues and that created risks of continued litigation. Thus, the risk

of nonpayment to attorneys (and the Settlement Class) were "significant litigation risks . . . [that] increase the market value of Class Counsel's representation." *In re TikTok*, 617 F. Supp. 3d at 941.

*The Attorneys' Performance and Amount of Work Necessary*. Notwithstanding these and other associated risks, such as establishing willful violations and securing and maintaining class certification, Class Counsel respectfully submit that they secured an excellent result.

The Settlement was the culmination of intensive litigation and negotiations between Class Counsel and GMT's Counsel. Class Counsel survived a motion to dismiss and obtained informal discovery from Lytx, detailing why it believed its technology did not fall within the ambit of BIPA. *See* Petterson Fee Decl. ¶¶ 8-9. The risks and the amount of work necessary to litigate and resolve this Action support the fee request.

*The Stakes of the Case*. Here, the stakes of the case were large, given the technical complexity of proving Plaintiff's case, the costs of bringing this case to trial, and the potential loss to Class Counsel should they have not prevailed. *See, e.g.*, *T.K. ex rel. LeShore v. Bytedance Tech. Co.*, 2022 WL 888943, at *25 (N.D. Ill. Mar. 25, 2022) (Blakey, J.).

Overall, Class Counsel took on significant risk to zealously litigate a high-stakes BIPA case in the face myriad legal uncertainties. Each of the above factors supports an award to Class Counsel of 32% of the common fund, after settlement administration fees and litigation expenses.

**C. <u>A lodestar crosscheck is not warranted.</u>**

The Seventh Circuit has made clear that when the Settlement provides a common fund, as here, a lodestar crosscheck is unnecessary. *See, e.g.*, *Williams*, 658 F.3d at 635-36 ("[C]onsideration of a lodestar check is not an issue of required methodology."); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). Accordingly, Class Counsel's fee request of 32.0% is appropriate given the prevailing standard of

33.33% and should be approved. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) ("There is simply little to no precedent recommending anything other than an award of 33 percent. With the only real evidence of the 'market rate' being one-third, that is what the Court will award.").

While Class Counsel believe that a lodestar crosscheck is unnecessary for the reasons provided herein, Class Counsel have spent more than 140 hours on Plaintiff Timmons' case against GMT alone (exclusive of parallel litigation against Lytx) resulting in a fractional or "negative" lodestar multiplier. *See* Petterson Fee Decl. ¶ 40. This "support[s] the reasonableness of a fee request, given that court have approved multipliers of five or more." *Domann v. Summit Credit Union*, 2020 WL 1847868, at *2 (W.D. Wis. Apr. 13, 2020). The fractional multiplier requested here is far below the amount typically requested in similar cases, and so is warranted. *See In re TikTok*, 617 F. Supp. 3d at 943 ("most multipliers fall between one and four," and approving a multiplier of 2.04 as "reasonable").

## VI. <u>THE LITIGATION EXPENSES AND NOTICE ADMINISTRATION COSTS WERE REASONABLY INCURRED AND SHOULD BE APPROVED.</u>

Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in the litigation. Fed. R. Civ. P. 23(h); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class). Reimbursable expenses are those "that are consistent with market rates and practices." *In re Ready-Mixed Concrete*, 2010 WL 3282591, at *3; *see also In re Synthroid*, 264 F.3d at 722 ("Reducing litigation expenses because they are higher than the private market would permit is fine; reducing them because the district judge thinks costs too high in general is not.").

Here, Class Counsel seek reimbursement of $216.60, which consists solely of printing costs and transcript fees reasonably incurred in furtherance of the investigation, prosecution, and settlement of this Action. *See* Petterson Fee Decl. ¶ 41. These expenses are minimal and Class Counsel respectfully requests that the Court approve reimbursement of these out-of-pocket litigation expenses.

## VII. THE REQUESTED SERVICE AWARD IS PROPER AND SHOULD BE APPROVED.

As a matter of public policy, because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Spano v. Boeing Co.*, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (approving incentive awards of $25,000 and $10,000 for class representatives) (citation omitted); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (upholding service awards to class representatives as they "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Clements v. WP Operations, LLC*, 2023 WL 315511, at *4 (W.D. Wis. Jan. 19, 2023) (service award of $5,000); *In re Sw. Airlines Voucher Litig.*, 2013 WL 5497275, at *1 (N.D. Ill. Oct. 3, 2013) (service award of $15,000) *amended on other grounds*, 2014 WL 2809016 (N.D. Ill. June 20, 2014).

Moreover, courts in this district have regularly granted service awards to class representatives in BIPA cases in recognition of the time and effort they invested in the case. *See, e.g.*, *In re TikTok*, 617 F. Supp. 3d at 949 (approving $2,500 for each of the 35 named Plaintiffs).[7]

[7] *See also, e.g.*, *Crumpton*, No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022), ECF No. 92 at 6 (service award of $5,000); *Montgomery*, No. 20-cv-07771 (N.D. Ill. Nov. 9, 2021), ECF No. 34 at 1 (service award of $7,500); *Burlinski*, No. 19-cv-06700 (N.D. Ill. Oct. 13, 2021), ECF No. 103 at 3 (service awards of $7,500); *Davis*, No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021), ECF No. 130 at 4 (service awards of $10,000 to three class representatives)

Throughout this litigation, Plaintiff has contributed substantially to this litigation and has invested considerable time, at his own expense, to do so. Plaintiff provided significant information at the outset of the case about his experiences with GMT's use of Lytx's technology. Plaintiff continued to show commitment to this case by staying actively informed of the litigation and providing information to Class Counsel. *See* Petterson Fee Decl. ¶¶ 43-46. Plaintiff devoted his time and effort to address the GMT's alleged misconduct. *Id*. His help has been instrumental to the success of this litigation and, Class Counsel respectfully submit, he is deserving of the requested service awards. *See Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725, at *2 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) ("Because a named plaintiff plays a significant role in a class action, an incentive award is appropriate as a means of inducing that individual to participate in the expanded litigation on behalf of himself and others.").

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order awarding Class Counsel attorneys' fees of $11,116.63, litigation expenses of $216.60, and a awarding Plaintiff a service award in the amount of $1,500.00.

Dated: January 5, 2026

Respectfully submitted,

*/s/ Sean A. Petterson*

Jason L. Lichtman
jlichtman@lchb.com
Sean A. Petterson
spetterson@lchb.com
Muriel Kenfield-Kelleher
mkenfieldkelleher@lchb.com
LIEFF CABRASER
HEIMANN & BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500

Gary M. Klinger

gklinger@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street,
Suite 2100
Chicago, IL 60606
(866) 252-0878

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2026, a true and correct copy of the foregoing was electronically filed and served electronically via the Court's CM/ECF system, which will automatically serve notice to all registered counsel of record.

*/s/ Sean A. Petterson*
Sean A. Petterson